In the Matter of the Application of GEORGE H. SCHAEFER, Appellant, for a Mandamus Order Directed to WILLIAM A. RATHMANN, as Commissioner of Public Works of the City of Buffalo, New York, and Others, Respondents.*

Fourth Department, January 4, 1933.

*M. Edwin Merwin,* for the appellant.

*John E. Livermore, Assistant Corporation Counsel [Charles L. Feldman, Corporation Counsel,* with him on the brief], for the respondents Buffalo Municipal Civil Service Commission and another.

*John L. Kelly,* for the respondent Harry J. Mathers.

* Affd., 262 N. Y. ——.

SEARS, P. J. This appeal involves the construction of the first sentence of section 31 of the Civil Service Law, which is as follows: " Any person who while holding a position in the competitive class under the Civil Service Law or rules, has been separated from the service through the abolition of a department, office or institution, or any section, bureau or division thereof, or whose position is abolished or made unnecessary, through no delinquency or misconduct on his part, shall be deemed to be suspended without pay, which suspension shall be made in the inverse order of original appointment in the service, and shall be entitled to have his name entered upon a preferred list."

The petitioner and the respondent Mathers each claim an earlier " original appointment in the service " within the meaning of the quoted sentence. Both men, previous to the 1st day of July, 1932, held the position of senior draftsman in the city architect's office in the division of buildings, department of public works of the city of Buffalo. On the 1st of July, 1932, because of lack of funds, the number of draftsmen employed in the division of buildings was reduced. The petitioner's name was then dropped from the payroll and he was suspended in accordance with the terms of section 31 of the Civil Service Law. The respondent Mathers was retained. The petitioner seeks in this proceeding to reverse this action and secure his own retention under a claim of seniority right.

The service records of the two men are as follows: The petitioner on July 12, 1920, was appointed to the position of landscape draftsman in the service of the city of Buffalo after successfully passing a competitive examination and being certified as eligible by the municipal civil service commission, and was assigned to service with the city planning committee. He continued in such service until January 25, 1925. Prior to that day, the petitioner successfully passed a competitive examination for the position of assistant supervisor of architecture (architectural draftsman) under the board of education of the city of Buffalo and was certified as eligible by the municipal civil service commission and on the 26th day of January, 1925, was appointed to such position. He continued in this place until the 31st day of December, 1930, when his services were dispensed with for the reason that the position was abolished for the lack of funds. Previous to taking the position under the board of education, he applied for and received leave of absence from the position of landscape draftsman under rule 24 of the municipal civil service commission of the city of Buffalo, which is as follows: " Rule XXIV. Leave of absence. A person holding a position in the civil service of the city may be granted a leave of absence for one year, and no person shall be eligible for reinstatement after the expiration of such period." On January 14, 1931, the

commissioner of public works of the city of Buffalo appointed the petitioner to a temporary position as a senior draftsman in the city architect's office, division of buildings, department of public works. This appointment was presumably made by reason of his name having been put on the preferred eligible list under the provisions of section 31 of the Civil Service Law when the position he was occupying under the board of education was abolished. On May 16, 1931, the position of senior draftsman which the petitioner then held was made a permanent one and petitioner was appointed thereto. This appointment was made by virtue of his name being on the preferred eligible list. This position of senior draftsman he held until his name was dropped from the payroll on the 1st day of July, 1932, as above stated.

The service record of the respondent Mathers is as follows: On July 6, 1921, he was appointed to the position of junior draftsman in the bureau of water, department of public works of the city of Buffalo after successfully passing competitive examination and being certified by the municipal civil service commission as eligible for appointment. He continued to hold this position until the 3d day of April, 1924, when he was promoted to the position of senior draftsman, bureau of buildings, department of public works, after having successfully passed a qualifying promotion examination. This position he still holds.

The controversy is over the meaning of the word "service" in the phrase "which suspension shall be made in the inverse order of original appointment in the service." There is no question that respondent Mathers' date of original appointment in the service is July 6, 1921. The difficult question is whether the petitioner's date of original appointment in the service is July 12, 1920, or January 14, 1931.

The petitioner contends that such construction should be given to the word "service" as to include his work as landscape draftsman, as supervisor of architecture (architectural draftsman) under the board of education and as senior draftsman in the division of buildings, department of public works.

The meaning of the word "service" in the quoted sentence is by no means free from doubt. An interpretation of it which would make it include any position in the competitive class of the civil service of the State and its civil divisions, including its cities, without reference to the position the employer finally occupied, would not bring about results apparently contemplated by the legislators in enacting the statute.

On the other hand, so narrow an interpretation cannot be given to the word "service" as to confine it to the very position that the incumbent was last occupying. Such a construction would make

the word " original " in the phrase " original appointment " of little, if any, meaning; and, even the word " service " would be inappropriate if referable only to a single position. (*Matter of Knights* v. *Staley*, 118 Misc. 837; affd., 200 App. Div. 850; *Abolition of Positions*, 37 State Dept. Rep. 286.) The purpose of the act is to assure to older employees protection in their positions against younger ones. Such assurance naturally makes for efficiency. In carrying out such purpose, the energetic and ambitious man who takes advantage of opportunities for promotions and favorable transfers ought not to be discriminated against. The word " service " in this section should be extended as far as reasonably practicable.

The petitioner during the entire period from his first employment as a landscape draftsman to the date of his final release has been doing work of the same general class. Of this there can be no doubt. It is contended by the respondents, however, that while he was holding a position under the board of education, he was not in the city service.

The department of public instruction was formerly a recognized department of the city of Buffalo. (Laws of 1914, chap. 217, § 290 *et seq.*) In 1917, by chapter 786 of the Laws of 1917, the principal sections of the Charter of the City of Buffalo relating to the department of public instruction were repealed and a more uniform system of education throughout the State was put into effect by the enactment of article 33-A of the Education Law. This law contained a provision making the board of education of each city (as well as of each union free school district) a corporation. (Education Law, § 300.) The board of education was given exclusive control of public education within its city or district. Still the city of Buffalo supplied funds for the educational work of the board of education, and the board of education was appointed by the mayor subject to confirmation by the council. (Education Law, § 866, subd. 5.) The city also paid each member of the board of education a salary out of the city's funds. (Buffalo Charter of 1927, § 452.)

Under the Civil Service Law the civil service of the State is divided into State service and city service, and by section 2 State service is defined to include " offices and positions in the service of the State or of any of its civil divisions except a city;" and city service, to include " such positions in the service of any city." The term " municipal commission " is defined to mean municipal civil service commission of a city. Under section 11 of the Civil Service Law jurisdiction is given a municipal civil service commission over the civil service in its particular city. In the city of Buffalo and in other cities, we believe, the municipal civil service commission

exercises jurisdiction with relation to positions under the boards of education. Such jurisdiction of the municipal civil service commission of New York city over positions under the board of education of New York city was recognized in *Matter of Ryan* v. *Kaplan* (213 App. Div. 131; affd., 240 N. Y. 690). (See, also, *People ex rel. Bush* v. *Houghton*, 182 N. Y. 301; *People ex rel. Werner* v. *Prendergast*, 206 id. 405.) In reference to this petitioner, the city municipal civil service commission placed his name on a preferred eligible list when his position under the board of education was abolished, and it was from this list that he was appointed to the position he finally held.

In view of the circumstances which involve practical constructions by the public officers intrusted with the administration of the Civil Service Law, as well as a recognition of the practice of the administrators of the law by the courts, we feel justified in holding that for the purpose of construing the word " service " in section 31 of the Civil Service Law, service under the board of education may be considered city service.

There is a further question to be determined. Even if the work of the petitioner under the board of education is within the civil service of the city, was there such a break because of his performing part of the service under the department of public works and part of the service under the board of education that the two should not be joined to constitute a continuous service so as to make the effective original appointment that of July 12, 1920? It is not necessary to decide whether in all cases of determining when the original appointment occurred any service given to any department of the city may be joined with any other service given to some other department of the city so as to constitute a single service. In this case it is enough to decide that where the service in the two departments of the city is of the same general class it may be considered continuous.

We reach the conclusion, therefore, that the petitioner's service was continuous, for no break occurred through any voluntary act of his or from any fault of his, that the date of his original appointment in the service was the 12th day of July, 1920, and that he was senior in the service to the respondent Mathers and is entitled to an order of peremptory mandamus.

The order should be reversed, with costs, and the petition for peremptory mandamus granted, with fifty dollars costs.

All concur.

Order reversed on the law, with costs, and petition for order of peremptory mandamus granted, with fifty dollars costs and disbursements.