In the Matter of SAMUEL J. SHEPHERD and Others, Petitioners, for Order of Mandamus against FREDERICK STUART GREENE, Superintendent of Public Works, and Others, Respondents.

Supreme Court, Albany County, September 10, 1934.

*Joseph Greenberg,* for the petitioners.

*John J. Bennett, Jr., Attorney-General* [*Patrick H. Clune, Assistant Attorney-General,* of counsel], for the respondents.

STALEY, J.   Each of the above-named parties has petitioned for a mandamus order against the Superintendent of Public Works, the Civil Service Commissioners, and the Comptroller of the State directing them to certify that each of said parties has a preferential and prior right according to their seniority in service of the State.

The case of Samuel J. Shepherd will be first considered in this memorandum.   The other cases present the same question.

It appears that on the 6th of October, 1924, Samuel J. Shepherd was appointed a mechanical draftsman in the Division of Architecture, Department of Public Works of the State of New York.   On the 14th of February, 1925, he took a competitive examination which he successfully passed and was second on the list.   On May 1, 1925, he was permanently appointed to the position of mechanical draftsman at a salary of $2,000 per year.

In May, 1927, Shepherd took a promotion examination for the position of mechanical draftsman, grade 5.   He ranked No. 1 upon the list, after passing the examination, and on April 1, 1927, was promoted to the position of mechanical draftsman, grade 5, at a salary of $2,200 per year.

On the 16th of January, 1929, he was appointed to the position of sanitary draftsman at a salary of $2,200 a year, and on the 1st of July, 1929, he was appointed sanitary draftsman at a salary of $2,400 per year.

In October, 1929, he took an examination for sanitary draftsman, grade 6, and was No. 1 on the list.

So far the positions and promotions of Shepherd were by his procurement and with his consent.

He claims, however, that without notice to him, on July 1, 1932, he was listed as a junior plumbing engineer, at a salary of $2,400 per annum, although he continued to do the same class of work as he had been previously doing as a mechanical and sanitary draftsman.

On the 30th day of June, 1934, the position of junior plumbing engineer was abolished, and Shepherd's name was dropped from the pay roll.

He claims that there were retained in the Division of Architecture several men doing the same class of work as himself, although junior in point of service, and that in dismissing him from the State service he was deprived of his rights of seniority, guaranteed to him by the civil service laws.

It appears that in 1930 a survey of the classification of positions in the civil service was made by a legislative committee and a comprehensive report and recommendations were submitted to the Legislature. This resulted in the passage of the Hutchinson Bill, but it was vetoed by the Governor. In 1932 a reclassification was again proposed in the Hewitt Bill, which passed the Legislature but was likewise vetoed by the Governor.

Apparently, it was anticipated that the reclassification bill would become a law, because the reclassification was set up by the various departments.

The appropriation bill of 1932 (Laws of 1932, chap. 25) contained the following provisions: " § 12. Whenever in this act an appropriation is made for personal service during the fiscal year nineteen hundred and thirty-two in any office or position in the classified civil service of the state, by or under a title recommended by the joint legislative committee on classification of position in the civil service that is different from the title in effect prior thereto, the incumbent of such position, under its present title on June thirtieth, nineteen hundred and thirty-two, shall thereafter be deemed to have in such position under its new title the status and all the rights and obligations he would have had if he had been appointed originally under the civil service law to the position under its new title as provided in this act. But such incumbent may be transferred or promoted without further examination or certification to any vacancy existing in a position of a different title, involving no higher or different requirements, in the judgment of the civil service commission, from those that he has met through examination and appointment under the civil service law. No part of this act shall

be construed to effect, of itself, a transfer of any position not heretofore included in the competitive class of civil service to such class. Where the previously existing title, in any such case, is prescribed in the consolidated laws or in a statute not of a temporary nature, this act shall not be deemed to create a new or additional office or position and the appropriation in this act shall be deemed to be for service in such statutory office or position regardless of the title. In identifying and connecting any officer or employee with his office or position, for the purposes of this section, the state comptroller, the civil service commission, and the heads of departments shall be governed by the class lists of positions with their proposed titles by classes as recommended by the joint legislative committee aforesaid, as certified to them by the director of the budget, and such lists so certified shall have the force and effect of law for such purposes."

This section was continued in the appropriation bills of 1933 and 1934 (Laws of 1933, chap. 120, § 12; Laws of 1934, chap. 826, § 12).

Shepherd claims his right of seniority under section 31 of the Civil Service Law, as amended by chapter 512 of the Laws of 1929, which reads as follows: " § 31. Civil service employees separated from the service of the state or civil division thereof preferred for certification. Any person who while holding a position in the competitive class under the civil service law or rules, has been separated from the service through the abolition of a department, office or institution, or any section, bureau or division thereof, or whose position is abolished or made unnecessary, through no delinquency or misconduct on his part shall be deemed to be suspended without pay, which suspension shall be made in the inverse order of original appointment in the service, and shall be entitled to have his name entered upon a preferred list. The head of the department, office or institution in which such person was employed shall furnish the state civil service commission or, if the position is in the service of a city the municipal civil service commission of said city, a statement showing his name, title of position, date of appointment, and the date of and reason for his separation from the service. It shall be the duty of the state civil service commission or, if the person suspended shall have been in the service of a city, of the municipal civil service commission of said city forthwith to place the name of said person upon a preferred list for the office, or position, in which he has been employed, or for any corresponding or similar office or position in the same group and grade as the position he formerly held, and to certify from such list the names of persons for reinstatement, in the order of their original appointment, before making certification from any other list, for such position or similar position. The eligibility for reinstatement of a person

whose name appears upon any such list shall not continue for a period longer than two years from the date of separation from the position so abolished, except that eligibility for reinstatement of such a person who shall have been separated from the service by reason of the provisions of the state departments law shall continue for a period of four years from the date of separation from the position abolished or made unnecessary by such law; and failure to accept, after reasonable notice, an office or position to which he has been certified shall be held to be a relinquishment of his right to reinstatement as herein provided."

Section 31 of the Civil Service Law requires, among other things, that when the position of a civil service employee is abolished without his fault, he shall be suspended in the inverse order of original appointment in the service.

Shepherd's original appointment in the service of the State and Public Works Department was on May 1, 1925, when he took and passed a competitive examination. Prior to that time he had a temporary appointment. The effective date under section 31 is the date of the original permanent appointment. (*Koso* v. *Greene*, 260 N. Y. 491.)

Section 31 of the Civil Service Law, in so far as the above-quoted provision is concerned, is designed to give preference and priority to employees in the State service according to their seniority, reckoning from the time of their original permanent appointment after competitive examination, where their position is abolished, in good faith, for the purposes of economy or efficiency.

In the case at bar it appears that Shepherd has been promoted from time to time. These promotions, up to the last one, were with his consent. At the time his position was abolished, he was doing work which included the drafting of plans in connection with heating, plumbing, electrical and sanitary work on buildings being constructed by the State, under the supervision of the State Commission of Architecture.

Section 31 must be given a reasonable construction so as to accomplish the purposes intended by the enactment of the Civil Service Law, which were, selection and promotion of employees in the public service upon merit and experience, without, however, interfering with the right of those in charge of public affairs to alter, change and abolish positions and departments as the exigencies of the State service require.

In line with the spirit of section 31, and the civil service laws in general, it seems to me that where an employee has come into the State service, and from time to time has been promoted, upon his application and with his consent, after taking a competitive examina-

tion, and later it appears that the position to which he has been promoted is no longer necessary, that employee may be suspended, even though there are others in positions which the employee has held, and from which he has been promoted, junior in point of service.

Suspensions may be made, therefore, of those in existing positions irrespective of previous service, but as between incumbents of such positions the suspension must be in the inverse order of original appointment in the service.

In other words, in the case at bar, as between Shepherd and others holding positions similar to his at the time of his suspension, those junior in point of service must first be suspended.

Shepherd states that, under the reclassification of the civil service, his title of office was changed from " sanitary draftsman " to " junior plumbing engineer." This was in July, 1932.

The reclassification statute did not pass the Legislature. Nevertheless, there actually was a reclassification by the joint legislative committee, and section 12 of chapter 25 of the Laws of 1932 gave effect to their reclassification for certain limited purposes. The subject of that enactment has been continued in the appropriation acts of 1933 and 1934.

Section 12 provides that, whenever an appropriation is made for personal service under the appropriation act, by or under a title recommended by the joint legislative committee on classification, that is different from the title in effect prior thereto, the incumbent of such position under its present title " shall thereafter be deemed to have in such position under its new title the status and all the rights and obligations he would have had if he had been appointed originally under the civil service law to the position under its new title as provided in this act."

The purpose of this section was simply and solely to allocate appropriations, and for that sole purpose incumbents of positions were to have the rights under their old titles prior to reclassification. Section 12 could not have been intended to accomplish more than this, for in each case of the enactment of its provisions it covered only the particular year for which the appropriation was made. Section 12 merely made appropriations under the new classification names so that the appropriation bill would not fail, whether the reclassification statute did or did not pass.

Since the reclassification bill did not finally become a law, it appears to me that it can be given no force or effect. Therefore, the petitioner must be deemed to be holding the position which he held before reclassification except for the purpose of appropriations.

It is argued by the Attorney-General that under subdivision 1 of section 6 of the Civil Service Law, as amended by section 2 of chapter

440 of the Laws of 1927, the Civil Service Commission has the power to make rules and regulations with respect to the civil service of the State, which rules shall have the force and effect of law, and that, therefore, the reclassification, having been adopted by the Civil Service Commission, has the force and effect of law.

I do not think that the Civil Service Commission intended to exercise its power under subdivision 1 of section 6 of the Civil Service Law, when it concurred in the reclassification. That reclassification was the result of action of the Legislature, the Civil Service Commission, the Director of the Budget, State heads of departments, and private organizations. That reclassification has been disapproved, because of the failure of the enactment of the bill providing for it. To hold that the reclassification has the force of law indirectly, when it has been disapproved directly, is to take an illogical and arbitrary position.

I hold, therefore, for the purpose of this application, that Shepherd, and others associated with him, hold the positions in which they were employed prior to reclassification.

Referring now, specifically, to the petition, it appears that Shepherd occupied the position of sanitary draftsman on July 1, 1929. In the schedule attached to this petition, he gives the names of several who have been retained.

At the time of the reclassification, A. Clark was a mechanical draftsman at $2,800 a year; Alfred McMurdie was a heating draftsman at $2,800 a year; Joseph J. Zahn was an electrical draftsman at $2,640 a year; Edward C. Howdowalski was an electrical draftsman at $2,800 a year; Willard S. Graw was an electrical draftsman at $2,800 a year; Lynden C. Dilg was a heating engineer at $3,600 a year; J. J. La Bossiere was a tracer at $1,200 a year; Clarence C. McRae was a mechanical draftsman at $3,400 a year; Nelson R. Pouter was a tracer at $1,000 a year; Thomas J. Walsh, engineering superintendent, or engineer, at $3,000 per year; and David E. Wilson, Jr., was an assistant " bldg." at $3,400 per year.

It does not appear from the petition, therefore, that any of the persons named in the petition occupied the same position as Shepherd before the reclassification, or now occupy such position, and there is no intimation by Shepherd that his old classification and the classification of the others named by him in his petition was not made in good faith, and was not in all respects legal and proper.

The petitioner, therefore, does not make out a case, even though his contentions in connection with the Civil Service Law can be sustained.

Shepherd's application should be denied.

The parties have cited the following cases which have been examined and which, if anything, tend to sustain the construction

of the Civil Service Law which I have adopted: *Matter of Skrocki v. Greene* (242 App. Div. 226); *Matter of Spivak v. Delaney* (264 N. Y. 491); *Matter of Clancy v. Halleran* (263 id. 258); *Matter of Schaefer v. Rathmann* (237 App. Div. 491; affd., 262 N. Y. 492).

In the matter of Paul W. Diederichs, it appears that in July, 1931, he was an estimator in the Division of Architecture, at a salary of $4,500 a year. Under the reclassification, he was listed as an assistant architectural estimator at the same salary. He alleges in his petition, in paragraph 9, that three other persons, junior in point of service, were doing the same class of work as petitioner. In paragraph 10 of the petition he alleges that there were other persons who hold the positions of architectural draftsman, similar in title to the position held by petitioner, who have been retained, although junior in point of service.

These allegations are denied. While they are not very specific, it seems to me that there is enough stated to create an issue as to whether or not there were others in the department who have been retained, holding a similar position to that of the petitioner, and who are junior in point of service, and, therefore, an alternative order of mandamus should issue in the Diederichs case.

The same situation arises in the case of Konrad Schwencke.

The application in the Shepherd case is denied, and an alternative mandamus order may issue in the cases of Diederichs and Schwencke.