In the Matter of WILLIAM SANGER et al., Respondents, against FREDERICK S. GREENE, as Superintendent of Public Works of the State of New York, et al., Appellants.

34

(Argued October 9, 1935; decided November 19, 1935,)

*John J. Bennett, Jr.*, Attorney-General (*Henry Epstein* and *Patrick H. Clune* of counsel), for appellants. The reclassification of positions, titles and salaries was proper, valid and legal. (*Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435; *Matter of Weeks* v. *Kraft*, 147 App. Div. 403; *Matter of Simons* v. *McGuire*, 204 N. Y. 253; *Chittenden* v. *Wurster*, 152 N. Y. 345; *Matter of Spivak* v. *Delaney*, 264 N. Y. 91; *Story* v. *Craig*, 231 N. Y. 33; *People ex rel. Murphy* v. *Bingham*, 130 App. Div. 112; 196 N. Y. 519.)

*John T. De Graff* for respondents. The reclassification has never been legally authorized by the Legislature. (*Matter of Shepherd* v. *Greene*, 153 Misc. Rep. 289; *People* v. *Tremaine*, 252 N. Y. 27.) The attempt to promote other employees by the reclassification was illegal and void. (N. Y. Const. art. V, § 6; Cons. Laws, ch. 7, § 16; *Hale* v. *Worstell*, 185 N. Y. 247; *Matter of Weiher* v. *Greene*, 239 App. Div. 652; *Matter of Ryan* v. *Kaplan*, 213 App. Div. 131; 240 N. Y. 690; *Thoma* v. *City of New York*, 263 N. Y. 402; *Barlow* v. *Berry*, 245 N. Y. 500; *Schieffelin* v. *Kelliher*, 125 Misc. Rep. 305; 215 App. Div. 770; *Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435; *People ex rel. Holleran* v. *Creelman*, 148 App. Div. 121; *People ex rel. Perrine* v. *Connolly*, 217 N. Y. 570; *Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435.) The Civil Service Commission has power to make a limited

reclassification but it cannot authorize promotions, demotions and transfers expressly prohibited by the Constitution and the Civil Service Law. (*Story* v. *Craig*, 231 N. Y. 33; *People ex rel. Rudd* v. *Cropsey*, 215 N. Y. 451; *Matter of O'Connell* v. *Clark*, 200 App. Div. 606; *Matter of Gilfallan*, 127 App. Div. 846; *Matter of Owens*, 76 Misc. Rep. 610; *Hale* v. *Worstell*, 185 N. Y. 247.)

*H. Eliot Kaplan* for State Civil Service Employees Association of the State of New York, *amicus curiæ.* The Civil Service Commission has broad power to classify positions. (*Hale* v. *Worstell*, 185 N. Y. 247; *Matter of Barthelmess* v. *Cukor*, 235 N. Y. 435.)

Hubbs, J. Prior to July 1, 1934, petitioners were employed in the State Department of Public Works, Division of Architecture, as senior architects, grade 7. At the same time three other men were also employed in the same division as senior architects, grade 7. The Legislature, in the appropriation bill for the year 1934–1935, cut the appropriation for the Division of Architecture, and certain senior architects, petitioners included, were suspended. They bring this proceeding to compel reinstatement as of July 1, 1934, asserting that they possess seniority rights over the three architects referred to above, but who nevertheless were retained in the service. Petitioners allege that they and the three architects referred to were originally appointed under the title architectural draftsman or designer, grade 7; that the three architects above referred to were subsequently appointed to positions as associate architects, those positions prior to July 1, 1934, being listed under the title, " chief of projects;" that the appointment of the three men named to positions as associate architects was illegal and void, and that at the time of the suspension petitioners occupied the same position as did the three architects referred to although the latter were no longer called senior architects as were petitioners,

but were then called associate architects, positions in grade 7, that being the grade in which petitioners as senior architects were listed.

Prior to July 1, 1932, grade 7 included three classes of employees, listed in the Civil Service rules as follows: Architectural draftsman or designer, chief of projects, assistant chief draftsman.

The specified salary for each of the positions was $3,250 or over, no maximum being fixed. In the appropriation bill for the year 1932–1933 the title of architectural draftsman or designer was changed to that of senior architect, that of chief of projects to associate architect, and that of assistant chief draftsman to that of principal architect. The change was in name only, the grade, salary range, duties and qualifications remaining unchanged. The change in name resulted from the report in 1931 of the Joint Legislative Committee on Classification of Positions in the Civil Service, certain titles of positions recommended in that report being used in the appropriation bill. The changes in titles of the positions above referred to involved no changes in the positions with respect to qualification of incumbents, duties or otherwise. That there is any difference in the duties of and qualifications for the position of architectural draftsman or designer (the former title) from those of and for the position of senior architect (the new title) is not suggested. The question for consideration is whether the change of titles of positions in the appropriation bill for 1932 from the titles formerly used resulted in or was used to bring about to the damage of petitioners a transfer of the three architects referred to from positions as architectural draftsmen or designers (new title, senior architect) to positions as chiefs of projects (new title, associate architects). All that occurred was the men referred to, who previously had served as architectural draftsmen or designers and who became, through the change of title senior architects, were shortly after July 1, 1932, assigned

to positions as associate architects, positions which prior to July 1, 1932, were vacant but listed under the title chief of projects.

When the budget for the year 1932 was prepared and the appropriation bill enacted, the report of the Joint Legislative Committee was before the Budget Director and the Legislature and the titles of a large percentage of the positions included were made to accord with the titles suggested in the report. Section 12 of the appropriation bill reads as follows:

" § 12. Whenever in this act an appropriation is made for personal service during the fiscal year nineteen hundred and thirty-two in any office or position in the classified civil service of the state, by or under a title recommended by the joint legislative committee on classification of positions in the civil service that is different from the title in effect prior thereto, the incumbent of such position, under its present title on June thirtieth, nineteen hundred and thirty-two, *shall thereafter be deemed to have in such position, under its new title the status and all the rights and obligations he would have had if he had been appointed originally under the civil service law to the position under its new title as provided in this act.* But such incumbent may be transferred or promoted without further examination or certification to any vacancy existing in a position of a different title, involving no higher or different requirements, in the judgment of the civil service commission, from those that he has met through examination and appointment under the civil service law. No part of this act shall be construed to effect, of itself, a transfer of any position not heretofore included in the competitive class of civil service to such class. Where the previously existing title, in any such case, is prescribed in the consolidated laws or in a statute not of a temporary nature, this act shall not be deemed to create a new or additional office or position and the appropriation in this act shall be deemed to be for service

in such statutory office or position regardless of the title. In identifying and connecting any officer or employee with his office or position, for the purposes of this section, the state comptroller, the civil service commission, and the heads of departments shall be governed by the class lists of positions with their proposed titles by classes as recommended by the joint legislative committee aforesaid, as certified to them by the director of the budget, and such lists so certified shall have the force and effect of law for such purposes."

The appropriation bill, chapter 25, Laws of 1932, became a law on February 26, 1932. Undoubtedly the appropriation bill was effective as an appropriation of moneys for positions previously properly established and classified according to law though therein designated under new names and constituted full authority for the certification of payrolls under the new appropriation titles in so far as those titles were used to designate positions so previously established and classified under different titles. In so far as section 12 may have been intended by the Legislature as a reclassification of positions and to provide for appointments or promotions in a reclassified service, it must be held ineffective.

In April, 1932, the State Civil Service Commission passed a resolution which may be divided into two parts:

First, "All provisions of the State Civil Service Rules insofar as they require promotion examinations in the cases of any persons holding positions in the competitive class of the Civil Service of the state whose title is changed on July 1, 1932, under Chapter 25 of the Laws of 1932, be and hereby are suspended," and

Second, " The State Civil Service Commission is hereby authorized to accept such change in title without examination when the same involves only change in title without change in duties."

That the second part of the resolution was designed to eliminate any question as to the requirement for an

examination for continuance of an employee in a position where chapter 25 had designated the existing position under a new title but without change in duties is clear.

The first part of the resolution must be held to have been intended to constitute a suspension of all provisions of the State Civil Service rules in so far as they theretofore required promotion examinations in the cases of any persons holding positions in the competitive class where title to the position then held was changed by chapter 25. In other words, the intent was not only to eliminate, by the second part of the resolution, examination of an incumbent of a position given a new title to enable him to continue in the position under the new title, but also by the first part of the resolution to eliminate by suspension of existing rules, examinations for promotion to other positions in the cases of all employees holding positions where titles to the positions held were changed by chapter 25.

The resolution as a whole can be given effect only in so far as it was within the power of the Commission under the Constitution and the Civil Service Law (Cons. Laws, ch. 7) to adopt the same. It, therefore, becomes necessary to determine the extent of the power of the Commission to adopt and suspend rules with respect to examinations for promotions.

The Constitution provides that appointments or promotions must be made " according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." (Art. V, § 6.)

The Legislature may, in creating a position, determine that it is not practicable to ascertain fitness by examination, but in such case there must appear some ground for its determination. The Legislature has, in the Civil Service Law, divided the civil service into the classified civil service and the unclassified civil service. (§ 9.) The Civil Service Commission has the power to " make

rules for the classification of the offices, places and employments in the classified service * * * and for appointments and promotions therein and examinations therefor." (§ 10.) All offices " shall be arranged in four classes to be designated as the exempt class, the competitive class, the non-competitive class, and, in cities, the labor class." (§ 12.) Sections 13 and 16 provide what positions shall be included in these classes and how appointments and promotions may be made.

The duty of arrangement of offices in classes is delegated by the Legislature to the Commission. The classification as made by the Commission divides positions into grades according to salary range and specifies different positions with different titles within certain of the grades. The positions in a grade are placed by the Commission in different classes with duties varying in importance. Salaries for the positions so classified by the Commission are provided for in the annual appropriation bill upon recommendation of the department heads and with the approval of the Budget Director, the appropriation usually being in a certain amount for a certain number of positions in a grade and class in a particular department, and except where a salary is specifically fixed by the appropriation bill the amount paid the incumbent of a particular position is dependent upon the certification of the department head within the salary range fixed by the Commission and the appropriation made. A transfer from one position within a grade to another in the same grade with more important duties and with larger salary is regarded in a sense as a promotion. Such, however, is not the statutory meaning of the term. The statute reads: " for the purposes of this section an increase in the salary or other compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion." (Civil Service Law, § 16.)

The statute makes an increase in salary of a position beyond the limit fixed for the grade in which the position is classified a promotion. It does not provide that a transfer from a position in a class in a certain grade to a more important position with a higher salary in the same grade in a different class shall constitute a promotion. Whether the Civil Service Commission has power to order examinations for transfer from one position to another in the same grade but in different classes where the two positions involve different duties and different salaries need not be decided in the case at bar. We are referred to no rule which required a promotion examination in the case of a transfer from the position of architectural draftsman or designer (now, senior architect) to chief of projects (now, associate architect). The only suggestion that such a rule ever existed arises from the fact that an examination was held in 1932. If it be assumed that such a rule was in force prior to the adoption of the resolution of the Civil Service Commission above referred to and that the adoption of such a rule was within the power of the Commission, there being no statutory requirement therefor, the power of the Commission to suspend the rule was co-extensive with its power to adopt it and the power to suspend it was exercised by the adoption of the resolution in question. It must, therefore, be held that on the date of the appointment to the position of associate architect of the three men referred to no rule was in force or was required to be in force making it necessary that a promotion examination be held.

We have heretofore held in a case where no promotion examinations were required by law or rule of the Commission that a transfer from one position to another in the same salary grade may be made by the appointing officer as he sees fit. (*Thoma* v. *City of New York*, 263 N. Y. 402.)

The three men referred to, having been assigned to their duties as associate architects through action on the part of the Superintendent and not through any change wrought by the appropriation bill, and there having been no requirement for an examination in connection with the transfers, legal rights of the petitioners were not violated by the transfers.

The effect of such transfers upon the seniority rights of the petitioners presents a different question. If, where curtailment of the service becomes necessary, transfers from class to class within a grade where no examinations are required violate the seniority rule, then petitioners, having greater seniority rights, are entitled to reinstatement in view of the retention in service of the three men having less seniority rights.

That the applicability of the seniority rule is limited, not only to positions in the same salary grade but to positions within the particular salary grade alike in the character of duties required of the employee, was the view taken by the Supreme Court in *Matter of Shepherd* v. *Greene* (153 Misc. Rep. 289), the only court which apparently has directly passed upon the question. There a sanitary draftsman, whose title was changed to that of junior plumbing engineer, upon abolition of his position was held not entitled to maintain mandamus proceedings based upon retention in service of other employees classified under various titles, whose seniority rights were less than petitioner's, it not appearing that the duties of the positions were the same as those of sanitary draftsman. That it is the duties of a position which constitute the basis of classification within a grade in so far as seniority rule is concerned, seems to be recognized in *Matter of Albert* v. *Board of Education* (264 N. Y. 613), where it was held that petitioners, employees of one bureau of a department, might compel reinstatement to a position in another bureau involving *the same duties* where such positions in

. . .

the other bureau were occupied by employees with less seniority rights.

If the seniority rule were to be given the effect contended for by the petitioners herein, it would necessarily result in the serious impairment of a branch of the State service. While all of the employees in a certain salary grade may originally be taken into that grade through the possession of like qualifications and as a result of similar tests, upon their induction into the service they may be assigned to work entirely different in character as between particular positions occupied, and may possess certain personal qualifications and characteristics which are recognized by their superiors as fitting them for the particular positions to which they are assigned. While it is undoubtedly proper that seniority rights should be observed where the duties of positions actually occupied are similar, it does not follow that those rights should be permitted to be exercised where the duties of positions differ though within the same salary grade.

The petitioners herein have not established that the duties of the position of senior architect are the same as those of the position of an associate architect. The record is to the contrary. They must, therefore, be held not entitled to the relief asked.

The orders should be reversed and the petition dismissed, without costs. (See 269 N. Y. 613.)

LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur; CRANE, Ch. J., dissents.

Orders reversed, etc.