Foster, J. (dissenting).
In this proceeding under article 78 of the Civil Practice Act, the Civil Service Commission of the City of New York and the Comptroller appeal as of right from an order of the Appellate Division, First Department, which reversed on the law an order of Special Term dismissing the petition herein, and granted the application of the petitioners, six Personnel Examiners in the employ of the New York City Civil Service Commission, to restrain appellants from designating six other Personnel Examiners as Senior Personnel Examiners.
The civil service structure of the City of New York was rearranged in 1955 by means of a general reclassification pursuant to the Career and Salary Plan. The establishment of the plan was approved by the Board of Estimate by resolution dated July 9,1954, effective July 1,1954. Subdivision 1 of paragraph XII of that resolution, entitled Employee’s Bights, provides: “ The salary of any position which is subject to the provisions of this resolution shall not be reduced for the then permanent incumbent by reason of such provisions, nor shall the rights or status of such incumbent be in any way impaired or adversely affected by reason of the provisions of this resolution ” (emphasis supplied).
The companion resolution of the City Civil Service Commission, which added rule XI to the commission’s rules to implement the Career and Salary Plan, was adopted August 19, 1954, effective July 1,1954. The rule provides in section VII thereof, as follows:
“ Section VII. Rights and Status of Incumbents and Eligibles on Lists
“ 1. The rights and status of the permanent incumbent of any position subject to the Career and Salary Plan * * * shall not be adversely affected or impaired by the provisions of this *1000 rule or any position classification, position reclassification, salary grade allocation, or salary grade reallocation adopted in accordance therewith. Any permanent employee entitled to an unlimited salary grade prior to the classification or reclassification of his position pursuant to the provisions of this rule shall continue to have such right and shall not be subject to a maximum salary, notwithstanding the fact that the position held by such employee may be classified or allocated to a salary grade having a maximum” (emphasis supplied).
Prior to the actual general reclassification in 1955 under the plan, the six Personnel Examiners whose appointments are now attacked had achieved the unlimited salary grade of either Classification Analyst or Training Technician, by means of competitive examination, or by means of appointments from lists established as the result of examinations for other titles, which lists were deemed appropriate for the unlimited grades (Civil Service Law, § 61, subd. 1). Upon general reclassification, in 1955, these six were assigned, on the basis of duties actually being performed at the time, to the positions of Personnel Examiners.
Petitioners, on the other hand, did not become Personnel Examiners until chosen from an eligible list established by the City Civil Service Commission on December 29, 1958. Prior to their promotion, petitioners permanently were employed as Assistant Personnel Examiners, and thus they did not obtain their present status as a result of reclassification from former unlimited grades. Each of the petitioners received his first civil service appointments after reclassification under the plan. The position of Personnel Examiner is limited as to salary and responsibility.
On July 28, 1960 the Board of Estimate adopted a resolution providing for six new Senior Personnel Examiner positions in accordance with the specifications of that position. On August 23, 1960 the City Civil Service Commission recommended the reclassification of the six Personnel Examiners into the higher position of Senior Personnel Examiners without competitive examination. These six, of course, were the persons who formerly had held unlimited salary grades. It is this action that petitioners are attacking.
The appeal presents this question: did the appointment of these six persons to a higher position constitute a promotion with *1001 out competitive examination contrary to the requirements of section 6 of article Y of the New York State Constitution and subdivisions 8 and 9 of section 52 of the Civil Service Law, notwithstanding that, prior to reclassification under the Career and Salary Plan, they had been in an unlimited grade ?
Prior to reclassification under the Career and Salary Plan, these six persons would have been entitled, without further examination, to positions equivalent in both salary and responsibility to that of Senior Personnel Examiner. Appointments to such positions would not have amounted to illegal promotions, since their prior grade was unlimited (Matter of Mandle v. Brown, 5 N Y 2d 51, 60, 62; Matter of Sanger v. Greene, 269 N. Y. 33; Matter of Crosby v. Board of Educ., 187 App. Div. 205, 209-210, affd. 226 N. Y. 705; People ex rel. Stokes v. Tully, 108 App. Div. 345, 351). The table of equivalencies adopted by the appellant City Civil Service Commission on July 15,1955, approved by the State Civil Service Commission on July 26, 1955, clearly recognized that former Classification Analysts and Training Technicians were qualified for reclassification as Senior Personnel Examiners, and that no further examination was necessary to establish their qualifications. Therefore, reclassification of these unlimited grades directly into positions of Senior Personnel Examiner, in the discretion of the Civil Service Commission, upon a finding that their qualification for the former positions rendered them fit for the latter, would have been permissible (Matter of Forman v. Kern, 282 N. Y. 583; Matter of Ward v. Kern, 284 N. Y. 698; Matter of Murray v. McNamara, 303 N. Y. 140; Matter of Carr v. Kern, 279 N. Y. 42; Matter of Lennon v. Delaney, 263 App. Div. 568).
The problem here, of course, is that upon reclassification the six persons were placed into the Personnel Examiner category, according “ ‘ to the realities which obtained in the operation of the agency prior to reclassification ’ ” (Matter of Mandle v. Brown, 5 N Y 2d 51, 64, supra); it was only subsequent thereto that they were assigned to the higher position although they had not been performing duties and had not had responsibilities precisely commensurate with the new position, either at the time of or subsequent to reclassification. Notwithstanding what duties they actually had been performing at the time of reclassification, I think that prior to reclassification under the Career and Salary Plan these persons had achieved a status, with accom *1002 partying rights, that was preserved to them by the saving clauses in the resolutions quoted above; that this status included the right to unlimited increases in salary and responsibility in the personnel branch of the Civil Service; and that these appointments were, therefore, not “ promotions ” illegally made.
The Appellate Division, in reversing, acknowledged that the six persons had reached the unlimited salary grade prior to reclassification; that petitioners had entered the Civil Service subsequent to reclassification; and that the appointment of the six persons to the higher position, in terms of actual duties and salary, “ could previously have been accomplished within the limits of their old unlimited grade. ’ ’ Nevertheless, they reversed upon this theory: the saving clauses operated only to preserve unlimited salary rights, and to prevent “limitation by way of maximum salary and perhaps of accruing salary increments, imposed as allocations on the new reclassified title.” This clearly is a perversion of the clauses, which preserve not only pre-existing salary rights, but also “ the rights and status ” of the “ permanent incumbent of any position subject to the Career and Salary Plan ’ ’. These saving clauses in the companion resolutions were the result of extensive hearings and discussions concerning the importance of protecting the rights of incumbents in unlimited grades to advancement in duties and salaries without further examination.
The City Civil Service Commission itself has interpreted the saving clause embodied in its own resolution to permit this type of appointment. Thus we are told by the commission: “It is significant to note that since reclassification under the Career and Salary Plan, over 3,000 employees in the unlimited groups have been slotted into positions of higher rank and grade from the interim titles initially conferred, by reason of their performance of duties commensurate with superior work performed prior to and at the time of reclassification, all in accordance with the Table of Equivalencies permitting such movement. Of this number, in excess of 800 employees have been reclassified into higher positions by the creation of new jobs made necessary by departmental requirements as in the case here challenged by the petitioners. We wish to particularly note that not a single instance has arisen challenging reclassifications of this kind, thus attesting to the fairness of the Career and Salary Plan which offered to those of prior unlimited rank and grade statu *1003 tory assurance to qualify for designation and appointment to higher positions without need of promotional examination therefor.”
This contemporaneous interpretation by the Civil Service Commission of its own resolution is entitled to great weight (Matter of Going v. Kennedy, 5 N Y 2d 900; Matter of Hotel Assn. v. Weaver, 3 N Y 2d 206, 211-213; Red Hook Cold Stor. Co. v. Department of Labor, 295 N. Y. 1, 9), for the “ practical construction of a statute by those for whom the law was enacted or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity” (Grimmer v. Tenement House Dept., 205 N. Y. 549, 550; Blau v. City of New York, 166 App. Div. 573; Matter of Armitage v. Board of Educ., 240 N. Y. 548; Vallina v. Wright & Kremers, 7 A D 2d 101).
The Appellate Division, in analyzing the rights preserved to incumbents of pre-existing unlimited grades, concluded that only the right to an unlimited salary was preserved, and that the plan did not provide for increased responsibilities for these incumbents without competitive examination. In short, the Appellate Division impliedly held that the commission could have accorded the six incumbents the salaries of Senior Personnel Examiners under the saving clauses but could not require that they perform the duties thereof. If this is the true meaning of the resolutions, it conflicts with the basic purpose of the plan; the result could be a tremendous inequality in pay for persons performing the same duties, i.e., Personnel Examiners. Such a construction is not realistic.
The Appellate Division also said: “In short, the unlimited grade ceased to exist on reclassification.” This was only partially true. For persons entering the position of Personnel Examiner subsequent to reclassification, a further examination became necessary for “ promotion ” to Senior Personnel Examiner. But for incumbents of the Personnel Examiner’s position who reached that position on the basis of reclassification from a pre-existing unlimited grade, no further examination was necessary; their vested rights to future advancement were preserved.
Such an interpretation of the saving clauses is fair and logical. As the years pass, the former incumbents of the pre-existing unlimited grades gradually will disappear from the service and advancement in personnel will be obtainable only by examina *1004 tion. In the meantime, the rights of career civil servants who gradually had reached the top (unlimited grades) in the service prior to reclassification should not be impaired. These persons are relatively few, and I see no inequity in the appellants’ interpretation and application of the clauses. Certainly, these petitioners, who did not reach the status of an unlimited grade prior to reclassification (and who were not even in the service until after reclassification), have no cause for complaint.
Matter of Mandle v. Brown (supra) does not hold to the contrary. Involved there was the reclassification of approximately 137 grade 4 attorneys in the competitive class of the city service, pursuant to the Career and Salary Plan. Grade 4 was an unlimited salary grade and, therefore, this court recognized that prior to reclassification “ employees in grade 4 had been assigned different salaries as well as different degrees of responsibility, without requiring promotional examinations ” (5 N Y 2d, p. 60). Thus, the opinion made it clear that prior to reclassification grade 4 attorneys properly were appointed to positions of varying responsibility and salary.
In dispute in Mandle was the method used to reclassify the grade 4 attorneys into the new rank of attorney or the higher ranks of senior attorney, supervising attorney and principal attorney. The proceeding was instituted by a grade 4 attorney who had been reclassified merely “ attorney”. Thus the dispute was between members of a pre-existing unlimited grade. We held that such reclassification which conformed the agency structure “ ‘ to the realities which obtained * * * prior to reclassification ’ ” was valid (5 N Y 2d, p. 64; Matter of Cook v. Kern, 278 N. Y. 195; Matter of Sanger v. Greene, 269 N. Y. 33, supra; Matter of Sippell v. Dowd, 191 Misc. 558, 562, affd. 274 App. Div. 1027). Our entire opinion was based upon the premise that appointments to various higher positions of grade 4 attorneys prior to reclassification, without competitive examination, was proper (5 N Y 2d, p. 62), and that reclassification of grade 4 attorneys into positions which conformed to duties actually being performed under original valid appointments did not constitute promotions (5 N Y 2d, p. 65; Matter of Cook v. Kern, supra, p. 199). As between the grade 4 attorneys, such reclassification was approved.
Our holding there does not necessarily prevent former grade 4 attorneys who were reclassified as “ attorneys ” from rising to *1005 positions of senior, supervising, and principal attorney without competitive examination, against other attorneys who had not reached the unlimited grade prior to reclassification. This was made abundantly clear by the former head of the Civil Service Commission at various press conferences subsequent to enactment of the 1 ‘ saving clauses ’ ’. All that we did in Mandle was to approve reclassification of an unlimited grade according to duties actually being performed. We did not say or imply that vested rights to advancement without further examination of those reclassified into the lower positions had been impaired.
Recognizing, as we did, the propriety of certain advancements by appointment of incumbents of unlimited grades prior to reclassification, I think that we must permit these same advancements subsequent thereto, under the clear language of the “ saving clauses.” Reclassification did not render unconstitutional what was proper and permissible prior thereto. The right to such advances, vested before, was not to be “affected” or “ impaired ” by operation of the plan.
Matter of Williams v. Morton (297 N. Y. 328), cited by the petitioners, is distinguishable. In Williams, an examining physician, grade 4 (unlimited), temporarily was assigned, in 1942, to the newly created position of Chief Medical Examiner, to be the head of the entire medical staff. Due to the war emergency, no competitive examination was held although the position was to have been filled by competitive examination. Thereafter, the Board of Education abolished the position and restored the doctor to his old grade 4 position, but assigned him the same duties and salary he had received as Chief Medical Examiner. We held that an illegal promotion without competitive examination was involved. The duties and salary of the new position were so far and above those of every other grade 4 examining position that we held that one should not have been chosen over the others without competitive examination. Moreover, the board had decided that an examination was practicable for the position, and then attempted to dispense with the need therefor.
In the case before us, the new duties of Senior Personnel Examiner were higher than that of Personnel Examiner, but to a much lesser degree than the differences in Williams (see Matter of Carolan v. Schechter, 5 Misc 2d 753, affd. 8 A D 2d 804, affd. 7 N Y 2d 980). Work of the same general type was *1006 involved. Furthermore, the table of equivalencies adopted as part of the Career and Salary Plan specifies that former Classification Analysts and Training Technicians have been found qualified to be Senior Personnel Examiners without further examination. These six were Classification Analysts or Training Technicians when reclassified. In my judgment their rights to appointments without further examination became vested prior to reclassification, and these rights were not intended to be impaired by reclassification.
The order of the Appellate Division should be reversed and the order of the Special Term dismissing the petition should be reinstated.
Order affirmed, etc.