Bergan, J.
The petitioners are in the competitive class of the civil service of the City of New York. After a series of promotion examinations they had, through a period of years before 1954, reached the level of Bule X, Clerk, Grade 5, a class without a maximum salary. This was the highest clerical position in the city competitive civil service.
*441 A Career and Salary Plan authorized by the Board of Estimate in 1954 provided for a broad reclassification of positions in the city’s civil service. Implementing this reclassification the City Civil Service Commission by resolution on August 17, 1955 abolished, effective July 1,1954, the Rule X, Clerk, Grade 5, and substituted a new clerical administrative group under Rule XI which included the title of Administrative Assistant and other higher titles.
With respect to employees then in unlimited salary grades, the commission’s resolution provided that on reclassification of their positions they should “ not be subject to a maximum salary ” even though the new position to which the incumbent might be assigned was specified for maximum salary.
Many of the new classifications embraced duties and responsibilities performed under the old ones. The commission made administrative determinations in a “ Table of Equivalencies ” concerning which it .stated that persons in the “ present classes ” were declared “ eligible for reclassification, without further examination”. The “present position” Clerk, Grade 5, was initially found to be the equivalent of Administrative Assistant; and later also the equivalent of Administrative Associate.
The principle underlying this method of reclassification by equivalency of duties actually performed arising from the Career and Salary Plan had been upheld in Matter of Mandle v. Brown (5 N Y 2d 51). There allocation of positions in the legal staff of the Corporation Counsel’s office under the Career and Salary Plan was sustained as conforming “ ‘ the civil service structure to the realities which' obtained in the operation of the agency prior to reclassification ’ ” (p. 64).
Such an allocation was found not to violate the Constitution or Civil Service Law as construed in Matter of Clare v. Silver (4 N Y 2d 107); Matter of Cook v. Kern (278 N. Y. 195); Matter of Sanger v. Greene (269 N. Y. 33). On this legal theory the allocations breaking down former Rule X, Grade 5, seemed to the city valid under these decisions.
But in Matter of Weber v. Lang (13 A D 2d 345, affd. 11 N Y 2d 997 [1962]) the basic concept of this allocation was invalidated. The reasons underlying the decision must be found in the Appellate Division Per Curiam, upon which affirmance in this court was based. There, six employees holding before *442 August 23, 1960 the position of Personnel Examiner were reclassified without competitive examination into the higher position of Senior Personnel Examiner. These employees had, before the adoption of the 1954 Career and Salary Plan, been promoted to an unlimited salary grade. Concededly in the unlimited salary grade which they had reached, they could have been given the same salary and assigned the same duties as later defined in the Career and Salary Plan for Senior Personnel Examiner without further examination.
But the court held that, the new grade having actually been established and the six employees not having theretofore actually performed the duties of the new grade, they could not be assigned to the new grade without further competitive examination.
“ Thus ”, said the Appellate Division Per Curiam, “having received the new position, these employees were not thereafter entitled to be placed in a higher position, with higher duties and a higher minimum salary, merely because the same result, in terms of actual duties and actual salary, could previously have been accomplished within the limits of their old unlimited grade” (p. 348). It was decisive that “the unlimited grade ceased to exist on reclassification ” (p. 348).
The difference between Mandle (supra) and Weber (supra) is that, although initial allocations could be made to new grades where substantially the same duties would be performed, after an unlimited grade has actually been abolished and broken down into new grades in actual operation, the former right of unlimited assignment is terminated as to new grades that would have been embraced within it in respect of incumbents who had not actually performed the duties of the grade to which they are newly assigned.
An express reservation against impairment of rights of persons in the former unlimited grade noted in creating the new grades was held not to require a different result. This decision was regarded by the city as frustrating a significant part, at least, of the purposes of the Career and Salary Plan.
Petitioners, in the present case, and a number of other employees who had, like the petitioners and by the same process of promotional examination reached Clerk, Grade 5, were reclassified by the commission effective January 1, 1956 to the title and salary grade of Administrative Assistant.
*443 Thereafter, the commission without additional examination reclassified a number of employees who had reached former Cleric, Grade 5, and been named as Administrative Assistants, to the higher grade of Administrative Associate and to other higher grades that had replaced former Clerk, Grade 5. Petitioners were not reclassified above Administrative Assistant.
Concededly these higher reclassifications above Administrative Assistant were invalid under Weber, although the assignments to new duties similar to those specified in the grades higher than Administrative Assistant and to higher pay would have been permissible had the incumbents remained in the former Clerk, Grade 5, status and had that former classification been continued.
To meet the administrative problem created in 1962 by Weber, the Board of Estimate on May 22, 1962 adopted a resolution reaffirming its purpose in promulgating the Career and Salary Plan to preserve the right of incumbents in the then unlimited grade to unlimited salary and the right of such incumbents to be assigned to perform the unlimited duties for which they were examined prior to their appointment to such position.
The resolution requested the Civil Service Commission to effectuate changes in the Career and Salary Plan to restore those pre-existing rights and this purpose was undertaken by a resolution of the commission December 30,1963 which amended the classification and compensation schedules.
This resolution restored to Rule X the unlimited type of positions which had existed before July 1, 1954. The commission approved the appointment and continuance -in unlimited Grade 5 of those employees who had previously been appointed under Rule XI to specified higher grades than Administrative Assistant. Under the unlimited classification to which the positions were now assigned by the commission the incumbents were to receive the salary and perform the duties that had pertained to the rescinded Rule XI positions. It is the appointment of those incumbents to the restored Rule X, Grade 5, that is challenged by these petitioners as being invalid.
The commission determined that the examinations which those incumbents had taken for the Rule X unlimited grade “ included the essential tests and qualifications ” for the grades to which they had been appointed and which appointments would have *444 been in conflict with Matter of Weber v. Lang (supra) had the grades been continued.
The answer of the respondents-appellants verified by the Chairman of the Civil Service Commission states that “ the restoration of such incumbents to their former titles and unlimited responsibilities was consistent with and analogous to the status they had had prior to the institution of the Career and Salary Plan and was in accordance with the respondents’ original resolution preserving without prejudice to any incumbents, having unlimited rights in respect to both duties and salary, the right to continue to enjoy such status without subjecting them to further promotional examination. ’ ’
Petitioners deny the power of respondents to restore the former unlimited grade in this manner and to abolish the classifications on which appointments were made under the Career and Salary Plan implementation which would have been in conflict with Weber. They contend that the former valid method of allocating duties and salaries within an unlimited grade could not be restored after the grade had been broken down into new grade components. The court at Special Term agreed with this contention and the controlling point of its decision seems to have been that the commission, which had promulgated the allocation in the first place, was, as a matter of law, without power to rescind it.
The court’s opinion was that the “non-existent Rule X, grade 5 ’ ’ could not ‘ ‘ be revived ” as “ a device ’ ’ to accomplish what the commission could not have done under the rule which it had made- and rescinded. The court seemed to have assumed the rule could not be changed to restore the former method of allocating positions. The Appellate Division affirmed without opinion.
The issue in the case is concerned with the power of a public authority possessed of rule-making capacity to repeal or modify a rule it has made. Its basic authority to modify in the absence of a demonstration of adverse effect on mature rights must be assumed as a matter of course and must be deemed undoubted. Petitioners, occupying positions to which they have been duly promoted, which are not themselves changed by -the new classifications, show no clear right to invalidate the assignment of *445 duties to other employees and the payment of salaries within the rules as now amended.
Petitioners do not show they would pass promotion examinations for the abolished competitive grades above Administrative Assistant; nor do they show that they will not be advanced in responsibilities or in salaries under the unlimited grade now restored. They show they'have not yet been advanced and other employees have been.
It is useful, in seeking to evaluate the basis for the appeal taken by the city officers, to examine the role played in the city service of the Rule X, Grade 5, Clerk, the “ top unlimited grade ” before July 1,1954 when the Career and Salary Plan took effect.
This grade was a means by which permanent civil service employees, familiar by years of experience with the mechanics of their special departments or bureaus, became available to aid the political heads or administrators of departments, who might change from administration to administration, in carrying on with continuity of policy the technical work of city government.
We are told by the Corporation Counsel that for over 60 years competitive class positions in the city’s civil service have been so graded that by successive competitive steps a final top unlimited grade could be reached. This grade was without limited specification as to the kind of responsibility that might be assumed by the incumbent; or the duties; or the top salary that could be paid if authorized by budgetary authorities. Having been tested competitively for the highest duties and responsibilities of the department or bureau in which they had advanced, the incumbents in this kind of grade could be assigned by the administrative head of the agency to a variety of duties.
They have constituted, as the Corporation Counsel suggests, ‘ ‘ a corps of seasoned technicians who make possible the continuity of key municipal operations Appointments were .made, he notes, “ after years of service and several promotion examinations ”. Department heads “have always had the discretion to utilize and assign this reservoir of skilled and experienced personnel to the highest duties in their respective occupational services, as may be essential to carry out the governmental functions entrusted to them. * * * It is vital that the public officials responsible for the City’s complex day-to-day operations *446 continue to Rave the flexibility to utilize this important public resource in the manner they deem essential for carrying out tbe key functions entrusted to them. ’ ’ *
The Career and Salary Plan as it had been envisioned by the city was “ substantially impaired ” by Weber. The Corporation Counsel argues on this point: ‘ ‘ The absence of the right to utilize to the maximum degree the skills of several thousand competitively tested unlimited grade city employees left a serious gap in the Civil Service structure which was detrimental to the public interest. Therefore, in an exercise of the same discretion by which it had established the Career and Salary Plan in the first instance, the City Civil Service Commission restored the former Rule X unlimited grade titles which had been abolished by the Plan, and reinstated to such titles the former incumbents thereof who had been separated by the Career and Salary Plan from their competitively achieved titles.”
If, as held under Matter of Sanger v. Greene (supra) and under Thoma v. City of New York (263 N. Y. 402), transfers from one position to another in the same salary grade are valid, the reassignment of various administrative duties to incumbents within the re-established Rule X, Grade 5, is also valid. There are public policy grounds to allow latitude to administrative officers to assign duties and fix salaries within a class broadly achieved by competitive examination. Unless some constitutional or statutory interdiction exists, their judgment ought not be overridden.
If the original unlimited gradé was established by a valid exercise of administrative power, those city officers who had created the grade and who later by the Career and Salary Plan had modified it, normally would have power to restore it. The sweeping injunctive interdiction upon the city’s reclassification granted at Special Term was not, therefore, warranted on this record.
*447 The order should be reversed, without costs, and the petition dismissed.
Chief Judge Desmond and Judges Fuld, Van Vooehis, Bueke, Scileppi and Keating concur.
Order reversed, without costs, and matter remitted to the Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

 To the same effect one might eompare the report of the Mayor’s Task Force on City Personnel, May 3, 1966, which notes that in the Police Department positions above the rank of Captain, the highest competitive class, are filled from that rank on assignment by the Commissioner at his pleasure and without prejudice to competitive class tenure and states (p. 5) that “ Comparable arrangements might well be established within each large department”.