[Civ. No. 40564. Second Dist., Div. Five. Aug. 16, 1973.]

JOHN J. SNYDER, Plaintiff and Respondent, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Defendant and Appellant.

COUNSEL

Thomas J. Cunningham, Milton H. Gordon and Donald L. Reidhaar for Defendant and Appellant.

Shapiro, Posell & Pilling and Mitchell S. Shapiro for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—This is an appeal from the granting of an alternative writ of mandate requiring appellant to reinstate respondent as an employee of appellant.

There is essentially no dispute in the facts of this case. Respondent, John J. Snyder, was employed in 1962 by the Regents of the University of California as an artist in the Program Promotion Department at the University of California at Los Angeles (UCLA). In March of 1965, the position of principal artist was established and Snyder was designated to fill that position. On December 28, 1970, Snyder was advised by his supervisor, Irene Bagge, that his employment as principal artist would be terminated and he would be on layoff status effective February 15, 1971. The reason for the layoff was that the position of principal artist was being abolished due to budgetary reductions. There is no dispute as to Snyder's competence and ability. Snyder has received all normal merit salary increases, including an increase of 5 percent on December 7, 1970, three weeks prior to his layoff.

Snyder's employment by appellant was not covered by Civil Service legislation, was not a tenured position, and was for an indefinite period of time. He was employed as a principal artist holding the job classification code position No. 6101. This job classification was eliminated by appellant for economic reasons, as was the job classification code position of senior artist No. 6102, and neither of the two job classification code positions of artist No. 6103 remaining in the department were vacant at the time of Snyder's layoff.

The various artistic positions in the program promotion department of the university extension are in order of importance: "Principal Artist," classification No. 6101, responsible for overall management and responsibility for a project; "Senior Artist," classification No. 6102, who supervises artists but under direction from his superior; and "Artist," classification No. 6103, who designs and creates under direction from above. Each such position has a separate University class or classification number, and each position encompasses and includes all the duties and responsibilities of the junior positions.

Rule 21 of the university's rules for nonacademic employees provides: "The order of layoff for career employees in the same department and classification shall be on the basis of relative performance as determined by the Department Chairman or comparable administrative authority. Such determination shall be based on departmental records and reports. When there is no substantial difference in performance, the order of layoff shall be in inverse order of seniority within the Department and classification, except that the Department Chairman or comparable administrative authority may retain any employee irrespective of seniority who possesses excep-

tional value to the University by reason of special skills, knowledge, or abilities that are essential to the operation of the Department."

On December 29, 1970, Snyder appealed his layoff to the "Department Head" pursuant to the rules for nonacademic employees in appealing grievances. His appeal to the "Department Head" was denied on January 6, 1971, by the department head, Irene Bagge. On January 13, 1971, Snyder appealed to a hearing officer for a formal hearing pursuant to the rules for nonacademic employees, which hearing was held on February 3, 1971, at the University of California in Los Angeles, Professor Robert Hal Mason, hearing officer, to determine if Snyder's layoff comported with the rules for nonacademic employees. The official transcript of the hearing was lodged with the court prior to the hearing. On February 11, 1971, Professor Mason rendered his decision recommending that the order of layoff be vacated and that Snyder's employment be continued. He further recommended that Snyder receive all financial and other benefits lost by reason of the layoff.[1]

The decision of Professor Mason was reviewed by the chancellor pursuant to the rules for nonacademic employees. On February 25, 1971, the term within which the chancellor could review the decision was unilaterally extended by the chancellor to March 8, 1971. On March 5, 1971, Chancellor Charles E. Young rendered his decision refusing to accept the decision of the hearing officer and upholding the layoff of Snyder. The decision indicated that before rendering his decision Chancellor Young had consulted the next step in the appellate process, the president of the university. Chancellor Young also stated: "I am informed by that Office [of the President of the University] that the intent of the rule is in fact to require layoff within 'classification' which is intended to mean the job classification

---

[1]In the decision, Professor Mason found inter alia that:

"(a) Petitioner [Snyder] was willing to accept a salary cut in view of the University's budget problems.

"(b) Petitioner's position level and his level of competence exceeded that of other artistic personnel in the Department who were not terminated.

"(c) Petitioner's seniority exceeded that of individuals kept by the Department.

"(d) Petitioner's technical skills as an artist and his industriousness and past contributions to the Department were not at issue.

"(e) There was no indication of vindictiveness or malice on the part of respondent [appellant] in its treatment of petitioner.

"(f) Petitioner did not contest the need for economic retrenchment on respondent's part by the elimination of the job classifications of Principal Artist and Senior Artist.

"(g) That the remaining two positions of Artist are presently occupied and that in order for one of such positions to be given to petitioner, the employment of the holder of such position would have to be terminated."

assigned a four digit title code number in our classification system, in Mr. Snyder's case Principal Artist, Title Code 6101."

Snyder appealed to the president of the university, Charles J. Hitch, on March 22, 1971, and on May 5, 1971, the president denied the appeal and stated that the decision of Chancellor Young "must stand." It was also stated that it is the intent of rule No. 21 to limit classification to the four-digit title code number and that that intent had been reaffirmed in present layoffs occurring to date.

█ The basic problem in this appeal is whether Snyder has a right to be considered on a seniority basis with the next lowest available classification in which qualifications were entirely within the qualifications he had as a principal artist. We hold that he does not.

█ A nontenured employee is subject to being dismissed without cause. However, he may not be discharged arbitrarily in disregard of his constitutional rights. (*Bogacki* v. *Board of Supervisors,* 5 Cal.3d 771 [97 Cal. Rptr. 657, 489 P.2d 537]; *Ishimatsu* v. *Regents of University of California,* 266 Cal.App.2d 854, 861 [72 Cal.Rptr. 756].) █ There is no suggestion that Snyder was discharged arbitrarily. The evidence shows and the court found that the discharge was required by budget considerations. Neither is there any suggestion that his dismissal resulted from his exercise of a constitutional right. (See *Rosenfield* v. *Malcolm,* 65 Cal.2d 559 [55 Cal.Rptr. 505, 421 P.2d 697]; *Stanton* v. *Dumke,* 64 Cal.2d 199, 205-207 [49 Cal.Rptr. 380, 411 P.2d 108].) Rather the trial court held that appellant "constitutionally was required to adopt a system in connection with the layoff of employees for economic reasons" and that Snyder "constitutionally could require [appellant] to place him in a four-digit job classification employment code position rather than the one he occupied even though such a placement could result in the layoff of an employee having less seniority than petitioner." No authority was cited to support these conclusions.

Snyder does not argue that he is entitled to seniority simply because he is a public employee. His argument is that the system is based upon seniority and that his seniority should be respected.[2]

A situation similar to the one at bench was considered by a New York court under a statute similar to the layoff rule before us. Instead of limiting

---

[2]In his brief Snyder puts it this way: "Thus respondent is not arguing as appellant would have the court believe, that he is blessed with seniority by divine right—he is simply arguing that in a specific system premised on seniority, his seniority must be respected."

comparison of seniority to the same classification, the New York statute permitted it only to specific pay grades when employees holding the same job titles were considered. The court found the statute to be constitutional even though it provided that an employee "may be suspended, even though there are others in positions which the employee has held, and from which he has been promoted, junior in point of service." (*Shepherd* v. *Greene* (1934) 153 Misc. 289 [274 N.Y.S. 211, 216].)

Snyder's right to consideration based upon seniority is based upon the rule adopted by the university. (See *N.L.R.B.* v. *Whiting Milk Corporation* (1st Cir. 1965) 342 F.2d 8.) We find that the rule is reasonable and unambiguous. There is no evidence that it has consistently been interpreted by appellant in any manner other than to provide "bumping" only within the same classification. The trial court made no finding nor is there any evidence that the rule was arbitrarily or capriciously applied to Snyder.

We find that Snyder had no constitutional right to have a bumping procedure which would encompass classifications other than the one in which his job was categorized.  ■   We further find that appellant was not required to include Snyder with employees in other job classifications for seniority purposes to determine which employee would be laid off.

In other words, if there had been no provision in the university rules for seniority bumping in any classification, Snyder would have had no constitutional right to have such a rule adopted. Secondly, since there was a rule involving his right on a seniority basis within the classification, he has no constitutional right to have that rule extended to include other classifications. The evidence establishes that there was no discrimination or malice toward Snyder. His layoff was determined solely on the basis of budget considerations.

Snyder also argues that a minor change in the language of the layoff policy subsequent to respondent's layoff which substitutes the word class for classification to determine the order of layoff establishes that "it must be presumed that the previous rule provided seniority within the area of skill rather than *class* title." (Italics respondent's.) We do not agree. The difference in the wording of the rule does not in any way change its legal meaning.

Snyder's last contention is that the superior court money judgment should be increased by the sum of $1,500 for attorney's fees. Respondent bases this contention upon Government Code section 800 which provides that the prevailing party in an action to appeal "any administrative proceeding

under this code or under any other provision of state law" may be awarded attorney's fees within the specified limits "where it is shown that the . . . determination of such proceeding was the result of arbitrary or capricious action or conduct" by the public entity. This contention has no merit. Clearly no showing was made that the action of appellant was arbitrary or capricious. Furthermore, our disposition of the basic issue in this appeal makes Government Code section 800 inapplicable.

The judgment is reversed.

Stephens, Acting P. J., and Hastings, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 24, 1973. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.