[Civ. No. 35866. First Dist., Div. One. Oct. 29, 1975.]

JOYCE AMLUXEN, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA, Defendant and Respondent.

28

**COUNSEL**

Thomas H. Crawford for Plaintiff and Appellant.

Donald L. Reidhaar and Glenn R. Woods for Defendant and Respondent.

## OPINION

**WEINBERGER, J.**\*—This is an appeal from a judgment denying a petition for a peremptory writ of mandamus to direct respondent to set aside the layoff of plaintiff and appellant and to reinstate her with full salary.

The petition for writ of mandate was filed in the Superior Court of the City and County of San Francisco on April 13, 1973.

On August 10, 1973, the trial court issued a notice of intended decision to deny the petition. On August 14, 1973, appellant filed a request for findings of fact and conclusions of law, and after the lapse of almost nine months the court signed and filed findings, and on May 6, 1974, entered judgment denying the peremptory writ of mandamus. This appeal followed.

Appellant was employed by respondent at its clinical laboratory facilities located in San Francisco General Hospital as a staff research associate IV. Her job description was that of "consultant microbiologist" and her principal duties involved responsibility for developing and conducting quality control tests. She had been employed by the respondent for about 27 years and was practically in charge of the laboratory until Dr. William Hadley was appointed section chief in microbiology in 1966. Thereafter friction developed and in 1969 appellant's supervisory duties were curtailed and she was appointed microbiology consultant with limited duties.

On June 30, 1972, Dr. Myron Pollycove, director of the clinical laboratories, was notified of a budget cut which he discussed with the laboratory advisory committee. It was determined that two guiding principles would be followed in making the reductions necessitated by the reduced budget. An attempt would be made (1) to continue the patient services provided before the cut and (2) to retain as many fulltime employees as possible. Dr. Hadley decided to eliminate appellant's position because the major part of the time in that position was spent in developing quality control systems for the future and was not devoted to the immediate provision of patient services and laboratory tests. Dr. Hadley stated that the work involved in appellant's position, although important, was not related directly to patient care. It

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

was determined that the quality control work performed by appellant would be drastically curtailed so that it would only require approximately one hour of technologist time per week. Dr. Pollycove agreed with Dr. Hadley's decision.

There were two other positions in appellant's classification for which appellant, because of seniority, was required to be considered. Appellant admittedly lacked the qualifications and skills required for these positions, one of which was in nuclear medicine and the other in hematology.

A hearing was had before the personnel appeals committee where appellant contended that her layoff was a punitive action. She established that on September 16, 1969, Dr. Pollycove wrote a letter to her alleging that she had not supported Dr. Hadley in implementing laboratory policies. The letter accused her of working at cross-purposes, thereby leading to the establishment of bitter factions in the laboratory and informed her that because of this she was removed from supervisory duties and appointed microbiology consultant to Dr. Hadley.

In July 1970 Dr. Hadley wrote a letter to appellant on her return to work after having taken approximately eight months of sick leave. This letter was strongly worded and strictly defined appellant's relationship to the microbiology section as consultant.

On July 21, 1972, appellant was informed that due to the budgetary freeze and lack of funds, she would be placed on indefinite layoff effective August 5, 1972.

On August 1, 1972, she appealed the decision to the personnel appeals committee established for such purposes, in which she alleged her belief her layoff was a punitive action which was the cumulative result of a pattern of increasingly frequent hostile actions taken against her during the immediately preceding years.

On August 15, 1972, appellant was rehired for three months in order to allow her sufficient time to be relocated in another position.

The personnel appeals committee arrived at the following conclusions: " '1. The evidence presented indicated the indefinite layoff was due to budgetary cut rather than to punitive actions. There was no evidence that the layoff was the culmination of punitive actions over a

period of years since there was no grievance filed by Miss Amluxen between 1 July 1970 and 12 July 1972. Miss Amluxen stated she was unhappy, but there was no formal action taken during this 2 year period in her new position as Microbiology Consultant. [¶] 2. Doctor Hadley and Doctor Pollycove testified that Miss Amluxen had performed satisfactorily as Microbiology Consultant. [¶] There was no evidence presented that substantiated the accusation that Miss Amluxen was a disturbing influence in the laboratory as stated in letter A (Dr. Pollycove's 9/16/69 letter to Miss Amluxen). [¶] 3. The declarations indicated that for many years Miss Amluxen maintained an outstanding performance record and her professional ability was held in high regard. Both witnesses testified to this also.' [¶] 'On the basis of these findings, the Committee makes the following recommendations: Miss Amluxen be placed on the General Assistance payroll in Clinical Laboratories at SFGH for a period not to exceed six months and be used in overload situations in the laboratory, such as whatever quality control work must be done or other jobs for which she is qualified. This would allow Miss Amluxen the opportunity to vigorously seek another position with the help of our Personnel Office.' "

In support of her petition in the superior court for a writ of mandate appellant filed a transcript of taped testimony taken at the hearing before the personnel appeals board and copies of all exhibits considered by the board. No additional testimony was taken by the superior court judge.

■ Appellant's first contention on appeal is that the trial court erred in applying the substantial evidence test in reviewing the proceedings before the personnel appeals committee. This contention is made for the first time on appeal, the appellant having specifically conceded below that the substantial evidence test was the proper test to be applied by the trial court. Respondent claims the "doctrine of invited error" estops appellant from asserting this alleged error as a ground for reversal. (See 6 Witkin, Cal. Procedure (2d ed. 1971) § 266, p. 4257.)

While this position is well taken, the decision as to whether the trial court should have applied the independent judgment rule or the substantial evidence test in the instant case can be made without reliance on the estoppel concept. The case of *Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854 [72 Cal.Rptr. 756], is determinative of this issue. In that decision, the court stated, "It is now settled that where the statewide agency is delegated quasi-judicial power by the Constitution, the reviewing court is limited to determining whether there

was substantial evidence supporting the agency's decision." (*Id.* at p. 862.) The court after reviewing article IX, section 9 of the California Constitution concluded "that the University is a statewide administrative agency possessing adjudicatory powers derived from the Constitution as to the problems and purposes of its personnel. The trial court correctly limited its review to a determination that there was substantial evidence supporting the hearing officer's recommendation and the final decision by the president." (*Id.* at p. 864.)

Appellant contends that *Ishimatsu* would be decided differently today and in support of this contention, cites the following from *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 141, footnote 7 [93 Cal.Rptr. 234, 481 P.2d 242]: "The present case does not involve a statewide agency upon which the California Constitution has specifically conferred adjudicative powers. (See Cal. Const., art. XII; *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94 [84 Cal.Rptr. 113, 465 P.2d 1]; *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 637-638 [234 P.2d 981]; *Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125, 131-132 [173 P.2d 545]; *Rudolph* v. *Athletic Com.* (1960) 177 Cal.App.2d 1, 6 [1 Cal.Rptr. 898]; but see *Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854, 862 [72 Cal.Rptr. 756].)"

She argues that because only *Ishimatsu* is preceded by the phrase "but see" it is probable that that case does not correctly reflect the Supreme Court's present reasoning on scope of review. We think it more probable that *Ishimatsu* was differentiated from the other cases cited in the footnote because in those cases the Constitution *specifically* conferred adjudicative powers to the Department of Alcoholic Beverage Control, State Personnel Board and State Board of Equalization, whereas a judicial decision was required to determine that such adjudicative powers were possessed by the Regents of the University of California. However, for whatever reason *Ishimatsu* was distinguished in *Bixby*, in a more recent Supreme Court decision, *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35 [112 Cal.Rptr. 805, 520 P.2d 29], the court included *Ishimatsu* in a list of cases exemplifying the category of agencies of constitutional origin which have been granted limited judicial power by the Constitution itself.

In view of the determination that the Regents of the University of California possess limited adjudicatory powers, it is not necessary for this court to determine whether a vested fundamental right is involved in the

instant case. In reviewing the decision of a "constitutional agency," the substantial evidence test controls on review, regardless of the type of right involved.[1] (*Strumsky* v. *San Diego County Employees Retirement Assn.*, *supra*, 11 Cal.3d 28 at pp. 35-36; Cal. Administrative Mandamus (Cont. Ed. Bar) § 5.67, p. 76.)

On appeal, the trial court's decision must be sustained if supported by substantial evidence. (*Bixby* v. *Pierno*, *supra*, 4 Cal.3d 130 at p. 149; *Ishimatsu* v. *Regents of University of California*, *supra*, 266 Cal.App.2d 854 at p. 865.)

Appellant next contends that because of the poor quality of the tape recording and the difficulty involved in transcribing it, it is not admissible evidence. Therefore, she contends that there is no evidence that a budget cut in fact occurred and that her layoff was necessitated by a budget cut.

The appellant filed the transcript of the tape with the trial court, and her counsel informed the court that the parties were prepared to stipulate that the documents on file with the court constituted the administrative record and that these documents included the transcript of the administrative hearing. The trial court determined that "Said transcript provided an adequate record of the proceedings and enabled this Court to rule on the issues raised by petitioner in this appeal." On appeal before this court, it is also concluded that the transcript provides an adequate, albeit incomplete, record of the proceedings.

■ At the hearing before the personnel appeals committee both Dr. Hadley and Dr. Pollycove testified that the layoff of appellant was due to

---

[1] "The roots of the indicated distinction insofar as it relates to so-called 'constitutional agencies' can be traced to their ultimate source in one of our most fundamental constitutional doctrines, that of separation of powers. That doctrine, which has been a part of the Constitution of this state since its inception, is presently expressed in article III, section 3 as follows: 'The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others *except as permitted by this Constitution.*' (Italics added.) It is the italicized proviso which forms the basis for the exercise of judicial powers by so-called 'constitutional agencies', insofar as specific constitutional provisions relating to the individual agencies in question directly vest judicial power in them, the agencies so favored can perform judicial functions to the extent of the grant without offending the doctrine of separation of powers. (See *Covert* v. *State Board of Equalization*, *supra*, 29 Cal.2d 125, 132 [173 P.2d 545]; see also Cal. Administrative Mandamus, *supra*, §§ 1.3, 5.67, pp. 5, 76.) Thus, even though a vested fundamental right be involved, the determination of the agency on factual issues is entitled to all the deference and respect due a judicial decision." (*Strumsky* v. *San Diego County Employees Retirement Assn.*, *supra*, 11 Cal.3d at pp. 35-36.)

a budget cut and lack of funds. Dr. Pollycove testified that he had been told by the associate dean of the medical school "exactly the firm dollar figure, what my budget would be and that was a very firm figure and that it was absolutely necessary to stay within the budget." He testified that this information was written, but counsel for the regents objected to the production of the writing with the comment, "I see no reason to doubt Dr. Pollycove's word," and "we have him testifying here today." This, of course, was not a valid legal objection to the production of the writing, but neither was the hearing before the personnel appeals committee a formal trial before a legally trained hearing officer. In lieu of the writing sought by appellant's counsel, respondent produced a copy of a document showing that 11.2 percent of the department employees fell in the category of "Resignations—not replaced" and 10.65 percent of the employees, including appellant, were in the column marked "layoff"; i.e., 21.85 percent of all the department's employees were released at the time Miss Amluxen was placed on "indefinite layoff." It is our conclusion that the evidence supporting respondent's position that these layoffs were attributable to reduced funding is as substantial as that tending to support the appellant's position that her layoff was "punitive."

The trial court concluded that, "Respondent's decision in those proceedings is supported by the findings" and that "Each finding made by respondent in those proceedings is supported by substantial evidence in light of the whole record."

As there is substantial evidence to support the decision of the trial court, the trial court's decision must be sustained. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130 at p. 149; *Ishimatsu* v. *Regents of University of California, supra,* 266 Cal.App.2d 854 at p. 865.)

Appellant contends that in determining to place her on indefinite layoff, respondent violated its own rules in several respects. She cites *Mabey* v. *Reagan* (N.D.Cal. 1974) 376 F.Supp. 216, 233, to support her contention that respondent acted in violation of its rules and denied appellant due process. In *Mabey,* the complaint of plaintiff and five other untenured faculty members of the California State University at Fresno alleged that their teaching contracts were not renewed as a direct result of their exercise of their rights of freedom of speech and assembly. In addition, they alleged that the grievance procedure by which they sought administrative review of their nonretention violated constitutional standards of due process. In its discussion of this latter issue the court stated: "It has been recently established that an untenured, probationary college

teacher is not constitutionally entitled to a hearing prior to the college's decision not to rehire him. Board of Regents v. Roth, *supra.* However, if the government agency has established discharge regulations the agency must comply with those regulations as a matter of constitutional due process even if the agency could have discharged the employee summarily without a due process review. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Yellin v. United States, 374 U.S. 109, 121, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963)." (*Id.* at p. 223.)

The regents of the university has established discharge regulations which are contained in what is called "Staff Personnel Policy" (hereinafter SPP). SPP section 760.12 states in part: "It is the responsibility of the department head to minimize indefinite layoffs of career employees by anticipating and planning for reduced staff needs." The evidence was that Dr. Pollycove did not receive news of a budget cut until June 30, 1972, and could not have anticipated this unexpected action. Furthermore, SPP section 760.12 is not applicable as appellant's layoff was due not to reduced staff needs but to a reduced budget.

Also this issue was not raised either at the hearing before the appeals committee nor at the trial court's hearing, nor in appellant's petition for a rehearing. Appellant may not raise the issue for the first time on appeal. (*Corcoran* v. *S. F. etc. Retirement System* (1952) 114 Cal.App.2d 738, 745 [251 P.2d 59].)

SPP section 760.13 reads in part, "The order of layoff for career employees in the same class within a department shall be in inverse order of seniority unless the order of layoff can be justified on the basis of performance." It also states, "The department head may retain any employee irrespective of seniority or performance if the employee possesses special skills, knowledge, or abilities which are essential to the continued operation of the department."

Respondent offered evidence that it was proceeding under the "special skills" rule. This evidence established that appellant was not qualified in hematology or nuclear medicine, as she herself admitted.

Appellant's contention that the "special skills" exception was improperly applied is without merit as is her contention that respondent was obligated to retrain her.[2]

SPP section 760.13 states in part, "Employees may be laid off on the basis of performance provided there are substantial differences in job performance as determined by departmental records and reports, including at least one written performance evaluation completed within the twelve months preceding the determination of the order of layoff." It was not claimed that appellant was laid off due to job performance; therefore, it was not necessary to produce a written evaluation of her performance. In fact, no such evaluation had been prepared on Miss Amluxen within the 12 months preceding her layoff.

■ SPP section 760.15 states in part: "The department head shall give the employee written notice of layoff which, whenever feasible, shall be at least 30 calendar days in advance of the effective date of layoff. If less than 15 calendar days' notice is given, a career employee shall receive pay in lieu of notice for each additional day he would have been on pay status had he been given 15 calendar days' notice."

Appellant was given 15 days' notice. The 30-day notice is to be given "whenever feasible" and is not required in every case. Furthermore, appellant was rehired for three months on August 15, 1972, and her contention that respondent violated the quoted portions of SPP section 760.15 is without merit.

Also, this issue was not raised at the hearing before the personnel appeals committee nor at the trial court and cannot be raised for the first time on appeal. (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 779-780 [97 Cal.Rptr. 657, 489 P.2d 537] [cert. den., 405 U.S. 1030 (31 L.Ed.2d 488, 92 S.Ct. 1301)]; *Corcoran* v. *S. F. etc. Retirement System, supra,* 114 Cal.App.2d 738 at p. 745.) The same cases apply to appellant's contention that respondent violated SPP section 760.13 which reads in part, "Prior to announcing the order of layoff, the department head shall review proposed actions with the Personnel Manager and the Affirmative

[2]Appellant also suggests that she should be permitted to "bump" employees of less seniority outside of her department and classification. In *Snyder* v. *Regents of University of California* (1973) 33 Cal.App.3d 977, 981 [109 Cal.Rptr. 506], this point was raised and decided contrary to appellant's position.

Action Coordinator." The particular claim is made that the affirmative action coordinator was not consulted.

Appellant admits this issue was not specifically urged before the personnel appeals committee. She asserts, however, without citation to the record, that this issue was urged before the trial court. Our review of the proceedings before the trial court fails to indicate that this point was raised at that time, nor was it raised in appellant's petition for a rehearing. Appellant may not urge this issue for the first time on appeal.

Appellant suggests that she was denied adequate notice of the hearing before the personnel appeals committee. Appellant stated to the trial court that her application for a writ of mandate was not based on lack of notice and admitted that this matter was waived at the hearing before the committee. Appellant may not raise this issue on appeal. (*De Luca* v. *Board of Supervisors* (1955) 134 Cal.App.2d 606, 609-610 [286 P.2d 395].)

Appellant's contention that "The Committee advised counsel for Miss Amluxen . . . during the hearing that the record would be kept open for the introduction of evidence of . . . reports [of a budgetary cut or lack of funds]" is without merit. We find no indication that such promise was made.

In the instant case, appellant was afforded a fair hearing on the matter of her layoff at which time she was given full opportunity to present her case. As to the specific points alleged by appellant on appeal, it appears that either the requirement was complied with or the matter is raised for the first time on appeal.

■ The record discloses that almost nine months elapsed between the notice of intended decision and the signing of findings of fact and conclusions of law, which signing occurred only after appellant had importuned the trial judge to expedite the matter. Counsel for appellant makes the statement in his brief that the court's adoption of "clearly one-sided" findings of fact and conclusions of law "was a vindictive act against counsel for appellant which caused substantial prejudice to appellant's cause, . . ." While the court's conduct violated rule 232, subdivision (g) of the California Rules of Court and is deplorable it cannot be demonstrated that the appellant's cause was prejudiced thereby. As appellant's counsel has conceded, "findings of fact have not traditionally been required in the strict sense in substantial evidence cases. . . ." (*Cow Hollow Improvement Club* v. *Board of Permit Appeals*

(1966) 245 Cal.App.2d 160, 171 [53 Cal.Rptr. 610].) The trial court's findings have not been relied upon by us in reaching our conclusion that there was substantial evidence to support the personnel appeals committee's decision.

The judgment is affirmed.

Sims, Acting P. J., and Elkington, J., concurred.

A petition for a rehearing was denied November 18, 1975.