[Civ. No. 36988. First Dist., Div. Four. May 13, 1976.]

LEON SMITH, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA.
Defendant and Respondent.

## Counsel

Loren E. McMaster, Michael D. Stump and Philip E. Callis for Plaintiff and Appellant.

Donald L. Reidhaar, Glenn R. Woods and Alice I. Youmans for Defendant and Respondent.

## Opinion

**CALDECOTT, P. J.**—This is an appeal from a judgment denying a petition for writ of mandamus to direct respondent Regents of the University of California, to set aside the layoff of appellant, Leon Smith, to reinstate him, and to pay back salary.

I

■ Appellant's first contention on appeal is that the trial court erred in applying the substantial evidence test in reviewing the proceedings before the Personnel Appeals Committee. He argues that the trend of the law, as evidenced by the holdings of the California Supreme Court in *Bixby* v. *Pierno,* 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], and *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], is toward requiring a court to exercise its independent judgment in reviewing decisions of statewide administrative agencies which have been delegated quasi-judicial powers by the state Constitution, *if such decisions affect a vested fundamental right.* Appellant urges that the contrary holdings of *Ishimatsu* v. *Regents of University of California,* 266 Cal.App.2d 854 [72 Cal.Rptr. 756] and *Amluxen* v. *Regents of the University of Cal.,* 53 Cal.App.3d 27 [125 Cal.Rptr. 497], be reconsidered in light of *Bixby* and *Strumsky.*

This court is bound by and must follow prior California Supreme Court decisions. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) In *Strumsky,* the Supreme Court observed that in reviewing the decision of a "constitutional agency," the substantial evidence test controls, regardless of whether a fundamental vested right is involved. (11 Cal.3d 28 at pp. 35-36.) Although this statement was dictum in *Strumsky,* it was based upon earlier holdings to the same effect. (E.g., *Covert* v. *State Board of Equalization,* 29 Cal.2d 125 [173 P.2d 545].) This holding was properly followed in *Amluxen,* and is determinative of the issue in the instant case.

Moreover, appellant's arguments miss the rationale underlying *Bixby* and *Strumsky.* Those decisions were based upon the doctrine of separation of powers as expressed in article III, section 3 of the state Constitution: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others *except as permitted by this Constitution.*" (Italics added.)

The rationale of *Bixby* and *Strumsky* may be summarized as follows: The separation of powers doctrine requires that where the adjudicatory decisions of administrative agencies lacking *true judicial powers* substantially affect vested fundamental rights, the trial court must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence.

Insofar as administrative agencies delegated true judicial powers by the Constitution are concerned, however, the constitutional exception to the separation of powers doctrine remains in effect. The basis of the Supreme Court's holdings in *Bixby* and *Strumsky* is, therefore, inapplicable to such "constitutional agencies," as noted in *Strumsky* itself. (11 Cal.3d at pp. 35-36.)

## II

■ University policy regarding indefinite layoff due to lack of work or lack of funds is set out in UCSPPM sections 760 to 760.4. Regarding order of layoff, section 760.13 states in relevant part: "The order of layoff for career employees in the same class within a department shall be in inverse order of seniority unless the order of layoff can be justified on the basis of performance. Employees may be laid off on the basis of performance provided there are substantial differences in job performance. . . .

"The department head may retain any employee irrespective of seniority or performance if the employee possesses special skills, knowledge, or abilities which are essential to the continued operation of the department." Thus, absent substantial differences in job performance and/or special skills, seniority is to be the basis for order of layoff. Where substantial differences in job performance or special skills are involved, however, the department head may, in his discretion, deviate from the seniority rule. Thus, section 760.13 provides for a multi-factored approach to determining order of layoff.

Appellant contends that the procedure adopted by the department head, Walter Arnold, in selecting personnel for layoff did not comply with section 760.13. Mr. Arnold testified that after determining the number of engineers to be laid off, he requested each of his division leaders to submit five or six names of the "poorer" performers. This information was then considered in relation to the seniority listing, which was already in his possession. Appellant contends that section 760.13 requires that the department head use seniority lists alone, and that by first identifying "poorer" performers Mr. Arnold committed himself to select employees for layoff from that group in violation of the seniority rule.

The Personnel Appeals Committee rejected appellant's contention and concluded that: "Mr. Arnold made a proper comparative evaluation

between Mr. Smith and all P-7 engineers junior to Mr. Smith and that the outcome would not have been affected by the use of Mr. Smith's preferred procedure." The committee's conclusion is reasonable in light of the language of section 760.13.

## III

■ In its findings, the Personnel Appeals Committee declared that although Mr. Smith's performance was "satisfactory," "[i]t is the opinion of this committee after reviewing the files that there exists [a] substantial difference in performance between [employee] H and Mr. Smith." Appellant contends that the committee's interpretation of "substantial" as used in section 760.13 has the effect of retaining relative performance, rather than seniority, as a basis for order of layoff. This, he argues, is contrary to the apparent intention of the university to shift from relative performance to seniority as a rule for layoffs.[1] Appellant argues, in effect, that the differences in performance cannot be sufficiently "substantial" if appellant's performance was "satisfactory."

This argument is without merit. Appellant was ranked 86th out of 90 engineers in his division due to low output of work, which was apparently associated with a reluctance to make independent technical decisions. Appellant's ranking as far as salary adjustments were concerned was the lowest of all employees in his P-7 classification (below the 10 percent line). His progression at the laboratory was "far below the average of other engineers with similar backgrounds and service." In contrast, the records and reports of employee H, with whom appellant was compared, evaluated him as an "excellent" and "superior" design engineer. His salary adjustment ranking fell on the borderline between the second and third quartile, and there was testimony to the effect that he had potential to become a project engineer.

## IV

■ Appellant contends that two critical supervisor's statements were improperly considered in selecting personnel for layoff. He argues that section 760.13, when read in light of section 255.1, requires that

[1] Prior to 1972, the rule regarding order of layoffs was set out as follows: "The order of layoff for career employees in the same department and classification shall be on the basis of relative performance . . . . When there is no substantial difference in performance, the order of layoff shall be in inverse order of seniority within the department and classification. . . ." (§ 2.06(1)(b).)

records and reports to be used in determining performance be limited to the required written performance evaluation and such other ordinary documents of which the employee would have knowledge.

Section 760.13 provides in pertinent part: "Employees may be laid off on the basis of . . . substantial differences in job performance âs determined by departmental records and reports, including at least one written performance evaluation completed within the twelve months preceding the determination of the order of layoff." The relevant portion of section 255.1 provides: "It is the policy of the University that the performance of each employee shall be evaluated periodically *and that written evaluations shall be used as the basis for appropriate personnel actions.*

". . . Performance evaluations shall include:

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(d) [W]ritten performance reviews sufficiently specific to inform and guide the employee and to provide direction for management in personnel decisions." (Italics added.)

Generally the same rules of construction and interpretation that apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies. (*Cal. Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028].)

■ Fundamental rules of statutory interpretation require that a statute be read as a whole, and its various parts harmonized so as to give effect to legislative intent. Whenever possible, effect should be given to every word, phrase, and clause so that no part or provision will be useless or meaningless. (*Weber* v. *County of Santa Barbara,* 15 Cal.2d 82 [98 P.2d 492]; *Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640 [335 P.2d 672]; Code Civ. Proc., § 1858.)

■ Applying these rules to the instant case, the committee properly concluded that university policy permits consideration of departmental records other than the required written performance evaluations. The phrase "departmental records and reports, including at least one performance evaluation," necessarily implies that records and reports other than performance evaluations may also be considered. In light of this language it is reasonable to assume that the university did not intend

that personnel evaluations be the sole basis for determining layoff. Supervisor's statements are bona fide departmental records. As such, the department was entitled to consider them.

Moreover, the admission of such statements was not prejudicial to appellant's case. Although more critical of appellant's performance than the 1971-1972 performance evaluation, these statements contain substantially the same information that was included in performance evaluations, for the periods 1970-1971, 1969-1970, and 1968-1969. The earlier performance evaluations, having previously been reviewed by appellant, were unquestionably admissible under the rules.

V

■    The Personnel Appeals Committee properly rejected appellant's contention that the "special skills" exception to the seniority rule must be applied to the department as a whole, rather than solely within the employee's job classification. The committee stated: "The Policy specifically provides that order of layoff is defined within *each* class. Thus, we find that . . . [Attorney] Stump's contention that . . . an employee of another class with less seniority is not provided for by the rules."

The case of *Snyder* v. *Regents of University of California,* 33 Cal.App.3d 977 [109 Cal.Rptr. 506], is determinative of this issue. The court therein declared: "[A]ppellant was not required to include Snyder with employees in other job classifications for seniority purposes to determine which employee would be laid off." (*Snyder, supra,* 33 Cal.App.3d at p. 982; see also *Amluxen, supra,* 53 Cal.App.3d at p. 37, fn. 2.)

■    There is no evidence that the "special skills" provision was arbitrarily or capriciously applied in this case. The evidence shows that a minimum of one year, and perhaps longer, would be required to retrain appellant to perform the duties of the two employees who were retrained under this provision. Thus, appellant's contention that respondent is obligated by the layoff policy to retrain senior employees is without merit. (See *Amluxen, supra,* 53 Cal.App.3d at p. 37.)

VI

Appellant's final contention is that the findings of the Personnel Appeals Committee are not supported by substantial evidence. He

therefore demands that the sufficiency of the evidence be reviewed in light of the entire administrative transcript, as required by *Le Vesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 638-639, footnote 22 [83 Cal.Rptr. 208, 463 P.2d 432]. The administrative transcript, however, is not a part of the record before this court on appeal, as it was not requested by either party.

The findings of an administrative agency come before the reviewing court with a strong presumption as to their correctness. Thus, it is presumed, in the absence of proof to the contrary, that such findings are supported by substantial evidence. (*Board of Permit Appeals* v. *Central Permit Bureau,* 186 Cal.App.2d 633, 642 [9 Cal.Rptr. 83].) Where, as here, the record on appeal is silent or deficient as to the issue presented, it will be presumed that the evidence authorized the decision. (*Transportation Guar. Co.* v. *Jellins,* 29 Cal.2d 242, 245 [174 P.2d 625].)

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 15, 1976.