[Civ. No. 24169. Third Dist. Aug. 29, 1985.]

ELLA RESPERS, Plaintiff and Appellant, v.
UNIVERSITY OF CALIFORNIA RETIREMENT SYSTEM et al.,
Defendants and Respondents.

**COUNSEL**

Phillip N. Bruce for Plaintiff and Appellant.

Donald L. Reidhaar, Christine Helwick, Martha M. Chase and Fred Takemiya for Defendants and Respondents.

**OPINION**

**SIMS, J.**—Plaintiff Ella Respers appeals from a judgment denying her petition for writ of mandate (Code Civ. Proc., § 1094.5). Plaintiff sought to

compel respondent University of California Retirement System (hereafter UCRS) to set aside its decision denying disability benefits.

On appeal plaintiff contends: (1) the trial court should have reviewed UCRS's decision using the independent judgment test rather than the substantial evidence test; (2) the UCRS Board (hereafter Board) abused its discretion by rejecting the findings of its hearing officer as to the credibility of evidence and witnesses; (3) assuming the substantial evidence test applies, the Board's decision is not supported by substantial evidence; and (4) the Board failed to make findings sufficient to enable appellate review of its decision.

We conclude the last of plaintiff's contentions has merit. We therefore reverse the judgment of the trial court and remand with directions that a peremptory writ of mandate issue commanding the Board to vacate its decision and to make findings sufficient to support its decision and facilitate judicial review. We also conclude that, on any judicial review following remand, the trial court should review UCRS's decision using the substantial evidence test.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was hired by the University of California (hereafter University) in September of 1971 as a licensed vocational nurse (LVN) at the University's Davis Medical Center (Medical Center). In May of 1972 plaintiff injured herself as she attempted to lift a patient out of his bed. Plaintiff experienced pains in her lower back and became diaphoretic. Plaintiff's injury was diagnosed as a pulled muscle. She was off work for nine weeks.

Plaintiff returned to work but could only work for short periods. Plaintiff was given a "floating" assignment which involved different duties every day.

Plaintiff continued to experience back pains and was hospitalized in 1978 for exploratory surgery. The surgery revealed a fractured spine.

Plaintiff returned to work in July of 1979. She was assigned to an alcohol abuse floor where she had to weigh patients in their beds.[1] She reinjured herself while in this assignment. Plaintiff was given large doses of medication which affected her eyesight.

---

[1] This somewhat unusual task is performed with bed scales which weigh about 25 pounds. If the patient is unable to be weighed on regular scales, the patient is rolled over in bed, the bed scales are placed on the bed, and the patient is then rolled onto the scales and weighed.

When plaintiff returned to work after this injury she was initially assigned to the mental health department. She was then assigned to be a door monitor, a position she held for nine months. Plaintiff suffered some minor injuries while working as a door monitor.

After plaintiff was terminated from her position as door monitor she was not reemployed by the Medical Center.[2]

Plaintiff began seeing Dr. James Peal, a psychiatrist, shortly after she stopped working as a door monitor. Peal concluded plaintiff suffered from psychophysiological musculoskeletal reaction as a result of her injuries while working as an LVN.

On September 24, 1980, plaintiff was medically separated from her employment with the University. On October 27, 1980, plaintiff filed an application for disability income from UCRS.

A UCRS disability review committee (hereafter Review Committee) considered plaintiff's application for disability income. Included for the committee's consideration was an October 2, 1979, letter from Dr. Peal to plaintiff's then-counsel describing the degree of plaintiff's mental impairment as "slight" but becoming "moderate under stress."

On July 14, 1981, the Review Committee denied plaintiff's application for disability income citing the Regents' definition of "Disabled Member" as a "Member who is prevented from performing the duties of his present position or a comparable position because of a physical or mental incapacity of permanent or extended and uncertain duration. . . ." The Review Committee determined plaintiff's medical information did not establish she was precluded from performing as an LVN or in a comparable position.

On November 4, 1981, the Review Committee formally reconsidered its decision denying disability income. The committee received a new report

---

[2]Efforts by the personnel department to find plaintiff another job proved unavailing. Plaintiff worked with Joel Bryan, a university vocational rehabilitation officer, in February 1980. Plaintiff was enthusiastic in her first meeting with Bryan. Bryan prepared an employee placement profile which was circulated to personnel staff who worked with medical units. Medical Center personnel identified four possible positions for which plaintiff could qualify: hospital pharmacy assistant I; communications assistant I; nursing unit manager assistant II; and emergency room senior clerk.

Plaintiff was interested in the nursing unit management assistant position, but it developed that other applicants for that position possessed degrees in hospital administration which plaintiff did not. The other positions did not interest plaintiff because they did not offer her a challenge and the pay was too low.

Bryan was unaware of plaintiff's emotional problems and did not consider them in preparing her employee placement profile. Bryan would have altered his approach if he had been aware of those problems.

from Dr. Peal, dated October 4, 1981, one full year after his earlier report. In this report Dr. Peal stated plaintiff was unable to perform duties as an LVN or in a comparable position. Dr. Peal concluded plaintiff was too depressed and apprehensive to function in University employment. The Review Committee rejected Dr. Peal's report on the basis it did not indicate plaintiff was disabled as of her requested date of disability, October 1980. On November 4, 1981, the Review Committee reaffirmed its decision to deny disability income.

Pursuant to UCRS regulation 11.01 plaintiff requested an administrative hearing de novo to review the denial of disability income. On October 7, 1982, a hearing was conducted before an administrative law judge (ALJ). Evidence presented to the ALJ included testimony of Mary Anne Keenan, a personnel analyst at the Medical Center. Keenan testified she thought plaintiff was qualified to be a communications assistant at the Medical Center. Keenan also testified plaintiff was qualified for the position of senior clerk.

Plaintiff presented the testimony of Dr. Peal, who had listened to Keenan's testimony. Dr. Peal testified that plaintiff could not perform the job of communications assistant and could not perform any of the functions of the senior clerk. Dr. Peal explained that plaintiff had difficulty attending to her own personal needs and had difficulty thinking, concentrating, remembering, and paying attention. Dr. Peal explained the position of senior clerk required contact with people which would prove overly stressful. The same was true of the communications assistant position. Dr. Peal also explained that plaintiff was on medications (Etrafon, Donnatal, Inonmin, and Dalmane) which would hamper her work-type activities.

Dr. Peal testified plaintiff was unable to work as of approximately January of 1980. Dr. Peal noticed no dramatic changes in plaintiff's condition since that time, except that her condition has gotten steadily worse.

On November 3, 1982, the ALJ issued a proposed decision in favor of plaintiff. The Review Committee rejected the ALJ's proposed decision and a majority of the Board concurred with its committee's decision. So far as the record discloses, neither the Review Committee nor the Board made findings supporting their rejection of the ALJ's proposed decision.

Plaintiff filed this action August 11, 1983, seeking a writ of mandate (Code Civ. Proc., § 1094.5) directing UCRS to set aside its denial of disability benefits. In its statement of decision the trial court rejected plaintiff's contention that the Board had to adopt findings. The trial court first noted that UCRS's own regulation did not require adoption of findings. The trial

court then explained that "when the Board rejected [the ALJ's] recommendations, it upheld the Disability Review Committee's decision to reaffirm denial of disability benefits. Thus, the Board relied on findings made by the UCRS staff during the initial determination of eligibility and during reconsideration of eligibility. *The Board's decision was based on these findings; therefore, it did not err by not making its own findings.*" (Italics added.)

The trial court also concluded it should review UCRS's decision using the "substantial evidence" test rather than the "independent judgment" test.

The trial court concluded the UCRS Board's decision was supported by substantial evidence. Judgment denying the writ was duly entered for UCRS and plaintiff timely filed notice of appeal.

DISCUSSION

I

 We first consider whether the Board was obligated to articulate its reasons for its rejection of the ALJ's decision in the form of "findings." We conclude it was.

We begin with the proposition that the Board's decision to reject the ALJ's decision was an *adjudicatory* administrative decision. The decision is adjudicatory in nature because it involves the application of general standards, set forth in the Regents' standing orders, to specific individuals' applications for benefits. (*Griffis* v. *County of Mono* (1985) 163 Cal.App.3d 414, 426-427 [209 Cal.Rptr. 519]; see *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 614 [156 Cal.Rptr. 718, 596 P.2d 1134].) The Board's decision is of necessity governed by the facts peculiar to plaintiff's particular case. (*Griffis, supra,* 163 Cal.App.3d at p. 427.)

 Ordinarily, when an administrative agency makes an adjudicatory decision, it is required to make findings sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the decision. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12]; see *Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 566-567 [216 Cal.Rptr. 367, 702 P.2d 525].)

 In rejecting plaintiff's argument that the Board was required to make findings, the trial court relied in part on the fact that UCRS regulations

did not expressly require the Board to make findings.[3] This conclusion was erroneous.

█ The need for findings is not based upon rule or regulation. In part, the need for findings is implicit in Code of Civil Procedure section 1094.5, subdivision (b) which defines "abuse of discretion" to include instances in which an administrative order or decision "is not supported by the findings, or the findings are not supported by the evidence." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 515.) In part, the need for findings is the product of judge-made law; findings by an adjudicative agency are necessary as a practical matter in order to permit judicial review of agency action. (*Id.,* at pp. 515-516.) Indeed, our Supreme Court has recently suggested that findings may be required by state constitutional requirements of due process. (*Saleeby* v. *State Bar, supra,* 39 Cal.3d at pp. 566-567.) Since other sources of law require the Board to make findings, its failure to promulgate a rule or regulation containing such a requirement is immaterial.

█ Nor is the Board's obligation to make findings affected by the Regents' status as a constitutionally established entity. In *Robinson* v. *State Personnel Bd.* (1979) 97 Cal.App.3d 994 [159 Cal.Rptr. 222], we required the State Personnel Board, also given powers under our Constitution (see Cal. Const., art. VII, § 2), to make findings. We noted that " '[a]lthough the agency action is reviewed by the test which determines the existence or absence of substantial evidence to support the agency findings, "implicit in [Code of Civil Procedure] section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." [Citation.]' " (*Robinson, supra,* at p. 1004.) UCRS has not cited any provision of the state Constitution relieving the Board of its obligation to make findings. We are aware of none. We conclude the UCRS Board was obligated to make appropriate findings supporting its rejection of the ALJ's proposed decision.

UCRS contends the Board's failure to make findings was harmless under the circumstances because, when it rejected the ALJ's recommendations, it impliedly adopted findings that staff and its Review Committee had made when the committee rejected plaintiff's claim at the reconsideration stage in 1981 *prior to the administrative hearing.* The trial court adopted this view but we cannot agree with it.

---

[3]UCRS Regulation 11.01, subdivision 2e simply provided: "When the UCRS Board Disability Review Committee rejects the recommendation of the Administrative Law Judge, concurrence by a majority of all Board members shall be obtained."

For present purposes, we assume arguendo that in 1981 the Review Committee made adequate findings in reliance on staff reports. Nonetheless, these findings cannot suffice as those of the Board. The record fails to show where the Board adopted the committee's findings as its own, and indeed, UCRS makes no contention that the Board did so. ■ It is true that an administrative agency may make findings by incorporating findings made by others. (See *Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, 872 [206 P.2d 355]; *McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 183 [131 Cal.Rptr. 462].) However, if an agency is to adopt the findings or reports of others, the record must reflect some adoptive act by the agency. (See *Pacifica Corp.* v. *City of Camarillo* (1983) 149 Cal.App.3d 168, 179-180 [196 Cal.Rptr. 670].) Absent some indication an agency has adopted the findings of others, there is no assurance that findings prepared by others reflect the views of the agency taking the action. ■ Consequently, absent some indication of adoption by the Board, we will not assume the Review Committee's findings satisfy *Topanga's* requirement that the grounds upon which *the agency acted* be clearly disclosed and adequately sustained.[4] (See *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 516; see *Pacifica Corp.* v. *City of Camarillo, supra,* 149 Cal.App.3d at pp. 179-180.) *McMillan* v. *American Gen. Fin. Corp., supra,* 60 Cal.App.3d 175, relied on by UCRS, is readily distinguishable because there the agency, a city council, expressly incorporated a portion of a staff report as its findings. (*Id.,* at pp. 180, 184.)

We cannot allow the Board impliedly to rely upon the 1981 findings of the Review Committee for another equally important reason. Proceedings before the ALJ in 1982 were governed by UCRS regulation 11.01, paragraph 11, which provided in effect for a hearing *de novo* before the ALJ at which evidence could be submitted and testimony taken. In this case Dr. Peal's testimony provided the ALJ with a detailed explanation of why plaintiff was unable to perform each of the jobs identified by the University's personnel analyst. This testimony had not been presented to the Review Committee. It goes without saying that the Review Committee's 1981 findings could not possibly have been based on a review of testimony it did not receive. The findings requirement serves to facilitate orderly analysis of the evidence actually presented to the administrative decisionmaker. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 516.) Findings must "bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.,* at p. 515.) Allowing the Board to rely on findings from a prior proceeding involving different evidence does not satisfy the purposes of the findings requirement because the prior findings do not reflect consideration of the "raw evidence" at issue.

---

[4]In the instant case, the requirement of findings will also insure that the adjudicative agency has reviewed the evidence presented to the ALJ and not simply its own staff reports.

UCRS relies on *Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817 [130 Cal.Rptr. 249]. There, a board of supervisors denied approval of a tentative subdivision map without making any written findings. (58 Cal.App.3d at p. 823.) The court held the board had in effect, adopted the findings of the planning commission which recommended denial of approval. (*Ibid.*) We find no indication in *Carmel Valley View* that the board of supervisors received any information at its public hearing which was not also known to the planning commission when it adopted its findings. Here, by way of contrast, the ALJ heard significant new testimony after the Review Committee had made its findings.

We conclude the Board's failure to adopt findings is prejudicial and precludes meaningful judicial review. Nor will we assume that a remand for findings is an idle act. In this case, the record before the ALJ presents substantial evidence both in favor of and against the granting of disability benefits to plaintiff. Whether plaintiff is entitled to benefits depends on how conflicts in the evidence are resolved and on what inferences are drawn from the evidence presented. Having heard the evidence first hand, the ALJ decided in favor of plaintiff. The Board reversed that decision. The Board's reasons for that reversal are far from obvious. The Board must articulate to plaintiff and to the courts, in the form of findings, its reasons for rejecting the ALJ's decision. Faced with the task of articulating and adopting findings, the Board could conceivably reverse its decision.[5]

Accordingly, we must reverse the judgment and remand to the trial court. The court shall issue a peremptory writ of mandate ordering the Board to vacate its decision subject to its right to review further the existing record and to make findings adequate to apprise the courts of the reasons for its decision. (*Robinson* v. *State Personnel Bd., supra,* 97 Cal.App.3d at p. 1004.)

## II

Since it is possible that plaintiff will again seek judicial review of this matter, in the interest of judicial economy we address plaintiff's contention that the trial court erroneously applied the substantial evidence test, rather than the independent judgment test, in its review of the Board's decision.

## A

The parties acknowledge that the Regents of the University of California derive limited adjudicatory powers from the state Constitution and

---

[5]At this juncture, plaintiff's contention that the Board unlawfully disregarded credibility determinations of the ALJ is premature and we do not address it.

that judicial review of acts of the Regents is under the substantial evidence test. (*Amluxen* v. *Regents of University of California* (1975) 53 Cal.App.3d 27, 33 [125 Cal.Rptr. 497]; *Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854, 864-865 [72 Cal.Rptr. 756]; see also *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35 [112 Cal.Rptr. 805, 520 P.2d 29]; *Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168, 177 [144 Cal.Rptr. 117].)

■ Plaintiff contends, however, that UCRS is an entity separate and distinct from the Regents. Plaintiff errs.

The state Constitution confers upon the Regents "all the powers necessary or convenient for the effective administration of its trust, including the power to . . . delegate to its committees or to the faculty of the university, or to others, such authority or functions as it may deem wise." (Cal. Const.; art. IX, § 9, subd. (f).) The Regents are thus constitutionally authorized to delegate to UCRS the power to implement and manage a retirement system. (See *Coleman* v. *Regents of University of California* (1979) 93 Cal.App.3d 521, 525 [155 Cal.Rptr. 589] [Regents' delegation of authority to president of university].) The Regents in their standing orders have "established the University of California Retirement System, consisting of two plans, namely, the University of California Retirement Plan and the Tax-Deferred Annuity Plan." (Regents' Standing Order 120.) The Regents' Standing Orders further provide that "All provisions of the University of California Retirement System . . . *shall be considered for all purposes an integral part of these Standing Orders*" and that "No provision of the University of California Retirement System . . . shall be adopted, modified, or abolished without the approval of the Board of Regents . . . ." (Regents' Standing Order 120.3, italics added.) The Regents' standing orders make it clear they have delegated the management of UCRS "to others" within the meaning of subdivision (f) of section 9 of article IX of the state Constitution. Therefore, the actions taken by UCRS are in legal effect those of the Regents and not those of an independent entity. Consequently, a decision of the Board is subject to judicial review using the substantial evidence test. (See *Smith* v. *Regents of University of California* (1976) 58 Cal.App.3d 397, 400-401 [130 Cal.Rptr. 118] [review of Regents' Personnel Appeals Committee decision under substantial evidence test]; *Amluxen* v. *Regents of University of California, supra,* 53 Cal.App.3d at p. 33.)

B

■ Plaintiff contends her right to equal protection of the laws will be violated if retirement-benefit disputes involving University employees are reviewed by trial courts using the substantial evidence test while retirement

disputes involving other public employees are reviewed by trial courts exercising their independent judgment. (See, e.g., *Strumsky* v. *San Diego County Employees Retirement Assn.*, *supra*, 11 Cal.3d at p. 46; *Dakins* v. *Board of Pension Commissioners* (1982) 134 Cal.App.3d 374, 380 [184 Cal.Rptr. 576]; *Rodie* v. *Board of Administration* (1981) 115 Cal.App.3d 559, 568 [171 Cal.Rptr. 433].) Plaintiff is mistaken.

██ "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], italics in original; *Johnson* v. *Department of Social Services* (1981) 123 Cal.App.3d 878, 883-884 [177 Cal.Rptr. 49].) ██ Plaintiff's contention fails at this first step; the two groups of employees are not similarly situated. The question whether an employee is situated similarly to another employee does not depend exclusively on the duties performed by the employee; the status of the employer is also at issue. The status of the employer to a large extent determines the expectations of the employment relationship and therefore whether the employee is situated similarly to other employees. (See *Townsend* v. *County of Los Angeles* (1975) 49 Cal.App.3d 263, 270 [122 Cal.Rptr. 500].) The cases have often concluded that employees of the state's colleges and universities may be treated differently from other public employees without violating guarantees of equal protection. (See, e.g., *American Federation of Teachers College Guild* v. *Board of Trustees* (1976) 63 Cal.App.3d 800, 804-805 [134 Cal.Rptr. 111] [no equal protection violation where teachers in community college district had to retire at age 65 while teachers in state universities and colleges had to retire at age 67]; *Saal* v. *Workmen's Comp. Appeals Bd.* (1975) 50 Cal.App.3d 291, 299-300 [123 Cal.Rptr. 506] [equal protection not violated where more favorable workers' compensation benefits paid to campus policemen hired by California State Universities than to campus policemen hired by University of California]; *California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219, 236-238 [108 Cal.Rptr. 251] [no equal protection violation where academic employees of state universities and colleges were denied pay raise granted to other public employees]; see also *California Federation of Teachers* v. *Oxnard Elementary Sch.* (1969) 272 Cal.App.2d 514, 530 [77 Cal.Rptr. 497].)[6]

---

[6]In *County Sanitation Dist. No. 2* v. *Los Angeles County Employees' Assn.* (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424, 699 P.2d 835], our Supreme Court quoted with approval a law review article that stated " 'for all intents and purposes, public employees occupy essentially the same position vis a vis the employer as their private counterparts.' " (*Id.*, at p. 575, quoting Edwards, *The Developing Labor Relations Law in the Public Sector* (1972) 10 Duq.L.Rev. 357, 359-360.) We do not read this passage as holding that private and public employees are similarly situated for purposes of equal protection analysis.

Here, UCRS, a part of the University, is obviously not similarly situated to state or local government generally. As our Supreme Court recently observed, " 'the University is intended to operate as independently of the state as possible. [Citation.]' " (*San Francisco Labor Council* v. *Regents of University of California* (1980) 26 Cal.3d 785, 789 [163 Cal.Rptr. 460, 608 P.2d 277], quoting *Regents of University of California* v. *Superior Court* (1976) 17 Cal.3d 533, 537 [131 Cal.Rptr. 228, 551 P.2d 844].) In fact, the University is so autonomous that for some purposes it is treated as a private entity rather than as a state agency. (*Ibid.,* see *Regents of University of California* v. *Superior Court, supra,* 17 Cal.3d at pp. 536-537 [usury laws applicable to private persons applies to University].)

Because plaintiff chose to work for the University—an agency distinguished from other public employers by provisions of the state Constitution—she was not situated similarly to employees of agencies of government not subject to special constitutional rules. Because employees of the University are not similarly situated with employees of other agencies of government, there is no violation of plaintiff's right to equal protection when a decision of the University's retirement board is reviewed by a court using a different evidentiary standard than that applicable to review of decisions made by non-university retirement boards.

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court with directions to issue a peremptory writ of mandate in accordance with the views set forth in this opinion.

Carr, Acting P. J., and Sparks, J., concurred.

A petition for a rehearing was denied September 26, 1985, and appellant's petition for review by the Supreme Court was denied November 13, 1985.