[Civ. No. 44152. First Dist., Div. Three. Mar. 25, 1982.]

ROBBIE BROUSSARD, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

638

COUNSEL

Andrew Thomas Sinclair for Plaintiff and Appellant.

Donald L. Reidhaar and Milton H. Gordon for Defendants and Respondents.

OPINION

**BARRY-DEAL, J.**—Robbie Broussard appeals from the judgment denying her petition for a writ of mandamus to direct respondents to reinstate her, with back pay, to her position in the Personnel Department of the University of California, San Francisco (University). She contends that the University's procedures regulating the dismissal of nonprobationary employees violate both federal and state constitutional guarantees of due process. (U.S. Const., 5th and 14th Amends.; Cal. Const., art. I, §§ 7 and 15.) Appellant also alleges that there is insufficient evidence to sustain the decision to terminate her. Neither contention has merit; therefore, we affirm.

Beginning in March 1976, appellant, a clerk in the general administrative division (Division) of the personnel department, exhibited a pattern of excessive and prolonged absenteeism. Her absences were so numerous that appellant had used up much more than her alloted sick leave.

During the next four months appellant discussed her attendance problem with her supervisors. She also received written notices informing her that her absences adversely affected the efficient operation of the Division, that if they continued it might result in her dismissal, that

she had the right to respond orally and in writing to the matters raised, and that she should consult with the employee relations analyst if she had any questions regarding her rights.

On August 18, 1976, appellant's personal physician informed her supervisors that appellant would be absent for at least an additional month. Thereafter, on August 23, personnel department manager Lee Charette wrote to appellant informing her of his decision to terminate her for medical reasons effective August 19, 1976. (See Staff Personnel Policy [S.P.P.] 765 et seq.) Appellant last worked on August 17.

A grievance hearing before the University hearing committee (Committee) followed, at which Charette and Division head Cynthia Fleischer testified on behalf of the University. Over objection of appellant's attorney, both witnesses refused to be sworn, as permitted by the University's rules governing grievance hearings. (S.P.P. Local Supp. 280.63.)

The witnesses confirmed appellant's documented absences and their written warnings to her. They testified that, in view of the indefiniteness of her absence as set forth in her physician's letter, it was in the best interest of the University to replace her with a permanent employee who kept regular attendance.

Appellant presented no evidence on her behalf. The Committee recommended the medical separation be sustained, and the chancellor and president of the University accepted their recommendation.

■ In support of her first contention appellant claims she was not afforded the preremoval due process rights required by *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].

It is conceded that appellant has a protectable property interest in the continuation of her employment with the University. (See *Perry* v. *Sindermann* (1972) 408 U.S. 593, 601-603 [33 L.Ed.2d 570, 579-581, 92 S.Ct. 2694]; *Potemra* v. *Ping* (S.D.Ohio 1978) 462 F.Supp. 328, 332; *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at pp. 206-208; *Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168, 174-175 [144 Cal.Rptr. 117].)

It is also well settled that due process is a flexible concept, and the

precise contours will vary from case to case. (See *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 334 [47 L.Ed.2d 18, 32, 96 S.Ct. 893].)

The procedures which are ultimately adopted depend upon the balancing of several factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (*Mathews* v. *Eldridge, supra*, 424 U.S. at p. 335 [47 L.Ed.2d at p. 33]; also *Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d at pp. 212-215.)

Using this analysis, *Skelly* concluded that minimum preremoval due process safeguards require "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.*, at p. 215.) Applying the *Skelly* guidelines to the University's procedures, we find that appellant was accorded her preremoval due process rights. (Cf. *Mendoza* v. *Regents of University of California, supra*, 78 Cal.App.3d at pp. 172-173.)

Prior to the medical separation from the University appellant had discussions with her supervisors and received several written notices in which she was warned that her continued absences might result in termination. She was advised of the opportunity to respond to the matter either orally or in writing, but she did not avail herself of this option. At the time appellant received her termination letter, she was well aware of the reasons for her termination, and she did not challenge that decision.

These procedures ensured that all relevant information was placed before the personnel manager before he made the decision to terminate appellant, thereby "'minimiz[ing] the risk of error in the initial removal decision' [citation]...." (*Skelly* v. *State Personnel Bd., supra*, 15 Cal. 3d at p. 215; see also *Stretten* v. *Wadsworth Veterans Hospital* (9th Cir. 1976) 537 F.2d 361, 368-369.)

█ Appellant next urges that the failure to require the University's witnesses to be sworn denied her of her due process right to a fair hearing.

The grievance hearing was conducted pursuant to the University's rule (S.P.P. Local Supp. 280.63), which provides, in pertinent part: "There shall be a minimum of formal procedures and the least possible delay. All parties shall be afforded the opportunity to question and cross-examine the principals and witnesses, and to examine pertinent documents or records submitted in evidence at the hearing. *In the event either party wishes principals or witnesses to be sworn, it will be strictly up to the principals or witnesses to determine if they wish to be sworn with the understanding that declining to be sworn carries no implication whatsoever concerning the credibility of the principals or witnesses.*" (Italics added.)

Applying the balancing test in *Mathews*, we find that appellant has an important interest in her continued employment and that it would be a small burden to require oaths to be administered. Militating against this additional requirement is the University's policy to minimize formalities. (S.P.P. Local Supp. 280.63.) In light of these conflicting policies, the overriding concern is whether appellant risked erroneous deprivation of her job through the procedures employed. (*Mathews* v. *Eldridge, supra*, 424 U.S. at p. 335 [47 L.Ed.2d at p. 33].) We conclude that she suffered no such risk.

At the evidentiary hearing appellant, through her counsel, was able to introduce exhibits, examine documents introduced by the University, cross-examine adverse witnesses, introduce favorable testimony—which she declined to do—and argue her case to the Committee.

The evidence was never in dispute. Appellant's absences were accurately documented, as were the written warnings from her supervisors. The sole question presented to the Committee was whether the University was justified in terminating appellant for medical reasons. The University's witnesses could not be described as self-interested with a motive to testify untruthfully. Under these circumstances, the "'specter of questionable credibility and veracity is not present.' [Citation.]" (*Mathews* v. *Eldridge, supra*, 424 U.S. at p. 344 [47 L.Ed.2d at p. 39].)

Following a substantially similar grievance hearing, a federal district court upheld the dismissal of a tenured university professor. In *Potemra* v. *Ping, supra*, 462 F.Supp. 328, plaintiff challenged his discharge for cause, claiming that the grievance proceeding did not afford him his

due process rights. At the evidentiary hearing plaintiff objected to the failure of the hearing committee to swear the witnesses. Unlike the instant matter, *Potemra* involved disputed issues of fact—that plaintiff neglected his teaching and departmental responsibilities.

Applying the three-factor analysis enunciated in *Mathews*, the trial court concluded that, notwithstanding plaintiff's property interest in his faculty position and the minor administrative burden to administer an oath, the extensive evidentiary hearing provided the necessary due process safeguards. (*Potemra v. Ping, supra*, 462 F.Supp. at pp. 332-335.) The court reasoned that few facts were "hotly contested," that the central concern was whether plaintiff's conduct was professionally acceptable, and that the witnesses had no motivation to be untruthful. (*Id.*, at p. 335.) Based upon the foregoing analysis, we conclude that appellant received all necessary procedural safeguards.

Appellant's reliance upon *Marlow v. Orange County Human Services Agency* (1980) 110 Cal.App.3d 290 [167 Cal.Rptr. 776] is misplaced. That court relied upon the California Administrative Code in ruling that testimony at an administrative hearing to terminate a participant in a methadone maintenance program must be under oath. That decision rested upon the statutory requirement that testimony be given under oath and did not rely upon due process analysis. (*Id.*, at p. 294.) The instant proceedings are not governed by the Administrative Procedure Act (Gov. Code, §§ 11500, 11501), and *Marlow* is not controlling; we choose not to follow it for the reasons discussed above.

We find substantial evidence to support the decision of the trial court. (See *Amluxen v. Regents of University of California* (1975) 53 Cal.App.3d 27, 33-34 [125 Cal.Rptr. 497].)

There is no merit to appellant's remaining contentions.

The judgment is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied April 22, 1982, and appellant's petition for a hearing by the Supreme Court was denied June 23, 1982. Newman, J., did not participate therein.